**CLEM LUMBER CO. v. MARTY et ux.**

No. 2400.

Court of Civil Appeals of Texas. El Paso.
March 13, 1930.

Rehearing Denied March 27, 1930.

Hamilton & Hamilton and Touchstone, Wight, Gormley & Price, all of Dallas, for appellant.

Read, Lowrance & Bates, of Dallas, for appellees.

HIGGINS, J.

Appellee E. A. Marty, contemplated purchasing a lot in Highland Park in Dallas county, and building a residence thereon according to certain plans and specifications.

About April 7, 1919, he submitted to the Trinity Lumber Company and appellant, Clem Lumber Company, a statement of the lumber and material needed for building the house and requested bids.

Harry Ables, an employee of appellant, figured the bill for that company, and in response to a telephone inquiry from Marty, Ables advised the appellant would furnish the lumber and material for $1,400. This was about April 7th. The bid of the Trinity Lumber Company was $1,930.

The estimate made by Ables was upon three sheets of paper. He did not total the cost of the various items shown thereon, but delegated this to some one else in the office who did so upon an adding machine, each page being totaled separately, and the grand total then obtained. The total of the items upon the first page was $1,451.46, and, when Ables made the report over the telephone to Marty, he had by error this subtotal slip before him, and reported the estimate and bid of appellant as $1,400. The sum of $1,400 instead of $1,451.46 was bid in accordance with the custom of appellant to quote round figures. As a matter of fact, the correct total of the three pages was $2,053.30. But for the error of Ables in looking at the wrong adding machine slip and total, he would have reported an estimate and bid by appellant of $2,000. The next day after the telephone conversation, Marty went to appellant's office when the estimate and bid of appellant was handed to him. It then showed no total upon any page, and at Marty's request Ables penciled on the last page $1,400.

On April 14th, Marty acquired title to the lot upon which he proposed building. On the same date, he entered into a contract with W. Sanford, a carpenter, to construct the house. Ollie Clem was appellant's managing officer. Clem later discovered the error in the estimate and bid, and refused to comply with appellant's contract to furnish the lumber and material for $1,400. Other facts pertinent to the questions presented will be indicated in the course of the opinion.

This suit was by Marty and wife against the Clem Lumber Company to recover damages. Upon special findings, judgment in their favor was rendered.

Appellant's propositions will be considered in what we regard as their logical sequence rather than in the order presented in the brief.

At the top of each page, upon which appellant submitted its bid, appears printed matter as follows:
"From
"Clem Lumber Company
"Dealers in
"All Kinds of Building Material.
"Mr. E. A. Marty, Address ——.
"No. —— 4-7-191—
"We agree to furnish the articles listed below for $—— to be delivered at —— Name of Owner——."

This price is subject to change after 10 days, and if you accept this estimate it will be necessary that the time of payments be understood and agreed upon in writing, and which of terms offered below are to govern. Strangers and persons, or firms having no financial rating will be required to give security. Errors in extensions subject to correction.

Terms

"(1) Cash the first of each month for all material bought the next preceding month.

"(2) If paid in advance or as material is furnished, a discount of $—— will be allowed from the above estimate.

"(3) If paid for as follows —— a discount of $—— will be allowed from the above estimate, 10% interest per annum will be charged on all accounts from maturity.

"The following estimate is hereby accepted and agree that Term No. —— is to govern.

"All payments to be made at ——.
"[Signed] ——."

Below this, upon the 52 lines of each page, are listed the items of material, and the price placed opposite each article.

It is in effect asserted by appellant that performance of his bid to furnish the lumber and other material for $1,400 should be excused, because it was a palpable mistake and so manifest it must be inferred as a matter of law that Marty was aware of the mistake before the contract was made; in support

of which it cites Geremia v. Boyarsky, 107 Conn. 387, 140 A. 749, and Moffett v. City of Rochester, 178 U. S. 373; 20 S. Ct. 957, 44 L. Ed. 1108; and further that the error was subject to correction by virtue of the provision in the printed matter upon which the estimate and bid was submitted which reads: "Error in extension subject to correction."

■ We have before us the original pages of the estimate and bid, and it seems to us there was nothing to put Marty upon notice of any mistake. It could only have been ascertained by addition of over a hundred items appearing upon the three pages. Certainly it cannot be inferred as a matter of law that Marty knew of the same before the contract was made. And in this connection the jury by its 15th, 16th, and 17th findings, found that Marty did not discover the mistake before the contract was made, and that he was not negligent in failing so to do. The cases applying the doctrine of palpable mistake as excusing the performance of a contract therefore have no application.

As to the effect of the words "Error in extensions subject to correction," there appears to be no error in extensions. The only extensions we find are the prices on each line at the right-hand side of the page. There are no errors claimed there. No totals appear at the bottom of the pages. The penciled memo of $1,400 on the last page does not appear in the proper place for a total. It appears far below the items shown in the first fourteen lines of the page and midway between the left and right margins. The words relied upon have no application to the error made.

■ Furthermore, the jury found that appellant in preparing and furnishing the estimate did not intend to make the printed words at the top of the pages a part of its bid for the sale of the lumber. The surrounding facts and circumstances support this finding. Upon this finding, the printed matter is not to be considered a part of the contract between the parties. Allison v. Hamic (Tex. Civ. App.) 226 S. W. 483; 35 Cyc. 97; Toledo, etc., v. Garrison, 28 App. D. C. 243; Lumber Co. v. McNeeley, 58 Wash. 223, 108 P. 621, 28 L. R. A. (N. S.) 1007; Weeks v. Robert A. Johnson Co., 116 Wis. 105, 92 N. W. 794.

Appellee intended to finance the building of the house by a note for $2,500 secured by mechanic's lien upon the premises. The manner in which the financing was to be effected was by Marty explained to Clem, to whom the plan was satisfactory. On April 14, the note and lien were executed and the same presented to Clem on the 15th. Prior to that time, however, appellant had already furnished upon the personal responsibility of Marty, lumber and material to the extent of $250.71 in value. Upon presentation of the note and lien to Clem on the 15th, he approved same

except that the notary had failed to affix his seal to his certificate upon the lien. Observing this, Clem returned the lien to Marty with directions to have the seal affixed by the notary and the lien filed for record. Clem retained the note.

A short time thereafter Clem discovered the error in his estimate. He thereupon telephoned to the courthouse and ascertained Marty had not then filed for record the mechanic's lien contract. About that time the contractor ordered more material which appellant refused to deliver. Marty got in communication with Clem who informed him of the error in the bid and declined to furnish other lumber and material. According to Clem's testimony, he declined to go forward with the contract because of Marty's failure to have the lien corrected and then filed for record. However, Clem declined to surrender the mechanic's lien note. With reference to retaining the note Clem testified: "I did not know that by holding that note that Mr. Marty could not deal with anybody else, because I had it; I did not look at it in that attitude. He was trying to get me to deliver the lumber on the bill at Fourteen Hundred ($1,400.00) Dollars. I wanted him to release his claim on that, and I sent Mr. Ables out to get him to do that, but that was after the conversation came up and I found out that he had not recorded the lien on the 17th."

This testimony shows appellant held the note after it had breached its contract to deliver the lumber and material for $1,400, and that it was held for the purpose of coercing Marty to release it from furnishing the lumber and material at the price stated. Not until July 7, 1919, was the note surrendered.

■ Appellant's sixth proposition is that Marty himself first breached the contract by refusing to consent to the correction of the mistake as stipulated in the estimate, wherefore appellant was entitled to hold the note because it had theretofore furnished material to the value of $250.71, which Marty refused to pay.

As heretofore indicated, appellant had no right to insist upon any correction in its estimate and bid by virtue of the printed words appearing at the top upon which the estimate was made, or corrected for any other reason. Hence, Marty was within his rights in refusing to consent to correction of the bid, and in refusing to pay the $250.71 in the face of appellant's repudiation of its obligation under the contract. This matter affords no justification for the refusal to surrender the note.

■ The first proposition asserts appellant was justified in refusing to furnish the lumber and material for the price bid because at the time appellant repudiated the contract Marty had failed to perfect the mechanic's lien in the particular indicated, and file same for record.

There would be, perhaps, some merit in this proposition but for the fact that appellant retained the note and refused to surrender same except upon condition that Marty consent to correction of the bid and pay about eight hundred dollars more for the lumber and material than he had obligated himself to pay. The defect in the notarial certificate had been corrected, and Marty offered to immediately file the lien for record if appellant would comply with its bid, which it refused to do.

Appellant could not at the same time repudiate its obligation under the contract and avail itself of its benefits. When it elected to repudiate its own obligation under the contract, it was its duty to surrender the $2,500 note which it had obtained under the contract. In view of Marty's offer to immediately record the lien, and the wrongful retention of the note by appellant, the first proposition presents no error.

The refusal of appellant's special issue No. 5 presents no error. The evidence does not raise any such issue. The evidence conclusively shows a bid of $1,400 by appellant, and acceptance of such bid by appellee.

■ Appellee was unable to finance the building operation until after appellant surrendered the note.

In the meantime, there was a rapid advance in the cost of material and labor. As soon as the note was surrendered Marty financed and built the house at increased cost. Damages were awarded upon the basis of the difference in cost between appellant's bid and the increased cost, less the amount of $250.71 for the material furnished by appellant. Other propositions assert that the proper measure of appellees' damage was the difference between the $1,400 bid, and the increased cost as of about April 22, 1919, the date of breach. The delay in building and completion was the direct result of appellant's wrongful retention of the note, in consequence of which appellee could not finance the building operation. The mounting cost during this period of delay was a proper item of damage.

It naturally resulted from appellant's breach of its original contract and wrongful retention of the note. The difference in cost prices upon which the court based its award of damages was the correct measure. C. J. 17854; Langford v. U. S. (C. C.) 95 F. 933; American Surety Co. v. Gonzales, etc. (Tex. Civ. App.) 211 S. W. 251.

Affirmed.