ARLINGTON INDEPENDENT SCHOOL
DISTRICT, Appellant,

v.

JAMES T. TAYLOR & SON, Inc., et al.,
Appellees.

No. 15950.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 21, 1958.

Rehearing Denied Dec. 19, 1958.

Samuels, Brown, Herman, Scott & Young, and Ardell M. Young, Fort Worth, for appellant.

McGown, Godfrey, Logan & Decker, John W. McMackin and Winfred Hooper, Jr., Fort Worth, for appellee.

MASSEY, Chief Justice.

The Arlington Independent School District desired to build a Junior High School building. Pursuant to this objective, it called for competitive bids from various contractors for the construction. Requirements included the tender of a surety bond guaranteeing that each contractor would, if his bid was accepted, enter into a construction contract with the School Board for completion of the work tendered at the amount of the bid. Nine contractors submitted general contract bids. Without reference to additional amounts to be expended for work by other contractors, the general contractors included James T. Taylor & Son, Incorporated, whose bid was the lowest of the nine received. Bock Construction Company was the next lowest. The difference between the bids was the amount of $36,278.00. The School Board awarded the contract to the Taylor Company on the bid it submitted, receiving and accepting the performance bond tendered by such contractor and Seaboard Surety Company, its surety.

The following day the Taylor Company notified the School Board that it had made a mistake in the bid it submitted. It seems that in the addition to the total amount of the accumulated estimates an amount equal to 6% thereof, which per cent was added as anticipated profit margin, the sum of $100,000 was lost through a failure to carry the hundred thousand digit. The contractor requested to be allowed to withdraw its bid. The Board refused. Thereafter the contractor refused to enter into any construction contract, returning unexecuted the one tendered. The Board then proceeded to award the contract to Bock Construction Company, which did enter into contract on the amount of its bid.

The District filed suit against James T. Taylor & Son, Incorporated, and the Seaboard Surety Company for the amount of $36,278, the difference between the amount of the defendant's bid and that of the Bock Construction Company. Said defendants answered, and in the same case the Taylor Company sought equitable relief by way of rescission.

The parties took the depositions of all the persons connected with the School District who were present at the time the contract had been let to the defendant. Also taken was the deposition of James H. Hicks, defendant's "estimator", who worked up the estimate and acted for the defendant in the delivery of its bid and at the meeting during the course of which the contract was awarded. No deposition was taken from Mr. J. O. Taylor, president of the defendant company, the party who executed the bid and bond. Mr. Taylor had occasion to examine the figures of Mr. Hicks before the bid was executed. He had written a figure at the bottom of Hicks' calculations. Such figure was a "rounding off" of a total of $534,226.47 to the bid figure of $534,175.

Both plaintiff and defendants moved for summary judgment on the basis of the depositions on file and the affidavit of Fred Buford, architect for the School District, who had made the preliminary estimates as to cost of the construction contemplated. Buford had been present at the time the School Board awarded the contract to the defendant.

The trial court granted summary judgment in favor of the defendants James T. Taylor & Son, Incorporated, and the Seaboard Surety Company and denied the summary judgment sought by the School District. The School District appealed.

Judgment reversed and cause remanded for a trial on the merits.

In the course of our discussion we will refer to the plaintiff as the District; the School Board as the Board, and the defendant as the contractor.

We believe that the record before us unquestionably shows that an honest mistake had been made by the contractor. The burden, however, was upon the contractor to show by clear and convincing evidence that its mistake was not due to its negligence. The nature of the mistake is readily recognizable but we believe that it is a question of fact as to whether it was made with an absence of negligence. Furthermore, we do not believe that it would be possible in law to find an absence of negligence on the part of the contractor when there is wanting testimony of some party in the control of the contractor who should be in position to testify in explanation and obviation of negligence. No testimony of Mr. J. O. Taylor was before the court on the summary judgment proceeding. Furthermore, we must remember that Mr. Hicks, who did testify, was an interested party. Additionally, the contractor carried the burden to prove that the Board knew or suspected that the mistake had been made at the time it awarded the contract in behalf of the District. We do not believe this to have been conclusively established. There is evidence in the record which would be said to raise the issue when we disregard all conflicts in the testimony and indulge in favor of the District, as the losing party, every intendment reasonably deducible therefrom, and also disregard all contradictory evidence in instances and respects where the credibility of the affiant or deponent testifying would be considered to be involved, and bearing all of such in mind determine if there are any issues of fact to be tried. It necessarily follows that the summary judgment in favor of the contractor and its surety was erroneous in that there were triable fact issues.

A summary judgment in favor of the District would be erroneous for the same reasons. When we apply the same test to the evidence of the contractor, making indulgements in its favor on the matter of non-negligence and knowledge or suspicion of its mistake on the part of the Board, we reach the conclusion that its evidence presents questions for the determination of a trier of fact and that the District was not entitled to summary judgment. It is now established that appellate courts may grant a summary judgment to the party who moved for such in the trial court in instances where it was erroneously denied, when at the same time a summary judgment was granted to his adversary and from which he has appealed and assigned error in the refusal of his motion. See Gulf, Colorado & Santa Fe Ry. Co. v. McBride, Tex., 322 S.W.2d 492.

It is obvious that a material phase of any trial on the merits will turn upon the construction to be given the language of the bond. As a condition for the receipt of the contractor's bid the delivery of the bond was a requisite. Its amount was 5% of the figure of the contractor's bid. The important language of the bond reads as follows: "The Condition Of The Above Obligation Is Such, that if the aforesaid principal shall be awarded the contract upon said proposal and shall within the required number of days after the notice of such award enter into a contract and give bond for the faithful performance of the contract, then this obligation shall be null and void; otherwise the principal and surety will pay unto the obligee the difference in money between the amount of the bid of the said principal and the amount for which the obligee may legally contract with another party to perform the said work if the latter amount be in excess of the former; but in no event shall the surety's liability exceed the penal sum hereof."

We are of the opinion that the parties contracted herein for liquidated damages and not for a mere penalty. This question turns upon whether the parties actually agreed that the sum of $36,278 (the increase in cost to the District, based upon the Base Bid and Alternate Bids Nos. 1 and 2, between the contractor's bid and the amount for which the Board did legally contract with Bock Con-

struction Company) should be forfeited by the contractor and its surety under the situation contemplated by the contractual language of the bond. This question is resolved as a matter of law. We believe that it is even more certain that liquidated damages were contracted for in this instance than was true in the analogous case of Gaynor Const. Co. v. Board of Trustees, Tex.Civ.App., El Paso, 1950, 233 S.W.2d 472, error refused.

Under the contract the contractor was availed of an option or choice of one of two alternatives, i. e., it could enter into the construction contract and give bond for its faithful performance or it could forfeit the amount which would be determinable in money upon the Board's entry into the construction contract with another party. The amount has been determined by the Board's entry into the contract with Bock Construction Company. Therefore, as to the amount of damages contracted upon as to measure, the situation posed here falls within the provisions of Restatement of the Law, Contracts, sec. 344, "Damages for Breach of an Alternative Contract", rather than under the same Restatement, sec. 339, "Liquidated Damages and Penalties". Under the latter section, we were able to afford relief in the case of Christie, Mitchell & Mitchell Co. v. Selz, Tex.Civ.App.1958, 313 S.W.2d 352. Illustration No. 6 under sec. 344 exhibits the situation existent as the result of the contractor's total breach of its alternative obligation to enter into the construction contract. Hence, if the District is entitled to prevail in a trial on the merits, it is entitled to the full amount sued for.

■ Aside from the matter of the measure of damages so contracted upon, we believe that the question of whether the District is entitled to collect the $36,278 will be a matter for the trier of fact. It will be a matter for determination whether, at the time the contractor's bid was accepted, the mistake therein was non-negligent, and the Board had reason to know that the contractor was acting under a mistake as to the true amount of its bid. The general rule is that though a contract has been formed by the acceptance of an offer—in view of the legal control of the objective appearance of the mistaken contractor's acts,—nevertheless the contractor may avoid the obligations of the contract if he can prove by clear and convincing evidence that the mistake was non-negligent and that the Board suspected that a mistake had been made. See Restatement of the Law, Contracts, sec. 503, "Mistakes by Only One Party; Differing Mistakes of Both Parties", and Restatement of the Law, Restitution, sec. 12, "Unilateral Mistake in Bargains" and Seavey and Scott's Notes of 1937 on this section by the American Law Institute.

It is true that under the notes of Seavey and Scott there are about the same number of cases cited contra as in accord with the principle recited by sec. 12 under "Restitution" in instances where the contract is wholly unexecuted but where a deposit has been made by one of the parties, who, however, made a unilateral mistake. See the cases annotated in 52 A.L.R.2d 792, et seq., "Rights and remedies of bidder for public contract who has not entered into a contract, where bid was based on his own mistake of fact or that of his employees",— and see particularly sections 9 to 12 inclusive.

The contractor's attorneys argue plausibly and persuasively for the adoption of a rule which they believe to be in accord with the majority of this country's jurisdictions and which would afford them the relief of cancellation. They cite Corbin on Contracts, Vol. 3, p. 437, sec. 609, in argument that "a just and reasonable man will not insist upon profiting by the other's mistake", and cite the cases from other jurisdictions to be found under the annotations of American Law Reports which decree rescission under circumstances analogous to those in this case. Several Texas cases are cited, language taken from which con-

stitute dicta, but which is persuasive in contractor's favor. Contrary to their stated opinion, however, we do not believe that the case is one of first impression in Texas. The following decisions are against the contractor's contentions: Brown v. Levy, 1902, 29 Tex.Civ.App. 389, 69 S.W. 255; State v. Scholz Bros., Tex.Civ.App., San Antonio, 1928, 4 S.W.2d 661; and Clem Lumber Co. v. Marty, Tex.Civ.App., El Paso, 1930, 26 S.W.2d 319, error refused. See also Simkins on Equity, 2nd Ed. (1911), Ch. LI, "Mistake of Fact", p. 521, "Unilateral Mistake". We believe that upon the occasion of a trial of the case on its merits the contractor will be obliged to rely upon the contention that its mistake was non-negligent and that the Board knew or had reason to know such mistake had been made by the contractor when it accepted the bid.

Judgment is reversed and the cause remanded for a trial on the merits.

RENFRO, J., not participating.