JAMES T. TAYLOR AND SON, INCORPORATED V.
ARLINGTON INDEPENDENT SCHOOL DISTRICT.

No. A-7147. Decided April 27, 1960.
Rehearing Overruled June 1, 1960.
(335 S.W. 2d Series 371)

McGown, Godfrey, Logan & Decker, Warren W. Shipman, III, and John W. McMackin, all of Fort Worth, for petitioner.

The Court of Civil Appeals erred in holding that ordinary negligence on the part of petitioner would preclude the granting of equitable relief by way of recission; that in order to bar equitable relief petitioner must have been guilty of bad faith or gross negligence; that petitioner had to show that respondent knew or should have known of the honest error prior to the award of the contract, and that equitable relief is not available even though the four essential prerequisites to such relief are present. Edwards v. Trinity & B. V. Ry. Co., 118 S.W. 572, writ of error refused; M. F. Kemper Const. Co. v. City of Los Angeles, 37 Calif. 2d 969, 235 Pac. 2d 7; State Highway Com. v. Canion, 250 S.W. 2d 439, error refused, n.r.e.; Baltimore v. De Luca Davis, 210 Md. 518, 124 Atl. 2d 557.

*Samuels, Brown, Herman, Scott & Young* and *Ardell M. Young,* for respondent.

MR. JUSTICE HAMILTON delivered the opinion of the Court.

The Court of Civil Appeals has reversed and remanded a summary judgment granted to the petitioner (hereinafter referred to as Taylor) by the trial court. That summary judgment denied the School District's right to its requested relief of $36,278.00. 322 S.W. 2d 548.

The School District had decided to build a Junior High School building and had called for competitive bids from various contractors for the construction. Taylor submitted a bid, together with a performance bond, as was required, and his bid of $534,175 was the lowest of nine bids submitted. The School District, within a few minutes after the bids were opened, accepted the bid of Taylor. His bond, furnished by Seaboard Surety Company, provided that it would be null and void if the contract to build the building was subsequently executed by him; otherwise the obligors would pay the difference between the Taylor bid and the bid finally accepted. In addition to the total amount of the estimates an amount of 6% was to be added by Taylor as anticipated profit margin. When this was done an error of $100,000 occurred due to a failure to carry a digit.

The error was not discovered until the morning after the School District had accepted the Taylor bid, when notice of such mistake was promptly given to the School District. Taylor refused to execute the tendered construction contract, and when the contract was returned unexecuted the Board awarded the contract to the next lowest bidder, Bock Construction Company. No readvertisement or additional expense was involved for the School District. Suit was instituted by the School District to recover on the bond the amount of the difference between the Bock bid and the Taylor bid, an amount of $36,278.00.

In reversing and remanding the summary judgment granted by the trial court to the petitioner the Court of Civil Appeals held that on a new trial Taylor must prove by clear and convincing evidence that the unilateral mistake made by petitioner was not due to Taylor's negligence, and that the School District knew or had reason to know that Taylor had made a mistake prior to its acceptance of the bid. The holding of the Court of Civil Appeals is that Taylor is liable unless he proves these

points. Taylor's points of error assert that equitable relief is not barred by ordinary negligence, but only by gross negligence or bad faith, and that it was not necessary that the School District know or have reason to know of the error prior to acceptance of the bid before rescission can be granted.

1,2 On the question of equitable relief by way of rescission, we have concluded that we cannot agree with the Court of Civil Appeals in holding that before petitioner is entitled to relief he must show by clear and convincing evidence that the unilateral mistake was not due to his own negligence and that the School District either knew or should have known of the mistake before accepting his bid. We think the great weight of authority is against the law as announced by the Court of Civil Appeals. Most of the cases and legal writers affirm the proposition that equitable relief will be granted against a unilateral mistake when the conditions of remediable mistake are present. These conditions generally are: (1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake must have been made regardless of the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense, i.e., rescission must not result in prejudice to the other party except for the loss of his bargain. There may be other circumstances which will govern or influence the extension of relief, such as the acts and extent of knowledge of the parties. Steinmeyer v. Schroeppel, 226 Ill. 9, 80 N.E. 564, 10 L.R.A. N.S. 114, (1907); M. F. Kemper Const. Co. v. City of Los Angeles, 37 Cal. 2d 696, 235 P. 2d 7 (1951); City of Baltimore, etc. v. De Luca-Davis Const. Co., Inc., 210 Md. 518, 124 Atl. 2d 557 (1956); Story's Equity Jurisprudence, Sec. 1381; 59 A.L.R. 809, Anno.: Unilateral Mistake as Basis of Bill in Equity to Rescind the Contract; 52 A.L.R. 2d, p. 792, Anno.: Rights and Remedies of Bidder for Public Contract Who Has Not Entered Into a Contract, Where Bid Was Based on His Own Mistake of Fact or That of His Employees.

In 52 A.L.R. p. 796, in summarizing the conditions under which equity will grant relief from the consequences of a bid for a public contract which has been submitted as the result of a remediable, unilateral mistake, before acceptance of the bid, it is stated in effect that no case has been discovered in which equitable relief has not been granted by way of rescission or similar appropriate relief where there is proof of a combination of circumstances establishing remediable mistake and time-

ly communication of knowledge to and assertion of the right to relief against the other party. The case of State Highway Commission v. Canion, 250 S.W. 2d 439, error refused n.r.e., is one of the cases cited as supporting this proposition.

The School District contends that the Canion case is not in point because in that case the contractor gave notice of the mistake and attempted to withdraw his bid before acceptance by the Highway Commission, and in the case before us the School District had accepted the bid prior to notice of the mistake and the request for withdrawal of the bid. We do not interpret the court's opinion in said case as attributing any particular importance to the fact that notice of mistake was given prior to acceptance. The court did recognize that a contract already existed between the contractor and the Highway Commission, even though it was a unilateral contract. It did this by granting a rescission. The court in that case based its decision principally on the fact that to enforce the contract would be unjust, inequitable and oppressive upon the contractor for an honest mistake which did not injure the Highway Commission. It is true the Highway Commission had not accepted Canion's bid when notified by him of his error three days after his bid was opened, but, in that case, as in this one, no formal contract had been entered into. It is said in 43 American Jurisprudence, Public Works and Contracts, Sec. 63, p. 805:

"As a general rule, equitable relief will be granted a bidder for a public contract where he has made a material mistake of fact in the bid which he submitted, and upon the discovery of that mistake acts promptly in informing the public authorities and requesting withdrawal of his bid or opportunity to rectify his mistake, particularly where he does so before any formal contract is entered into."

3 It seems to us to be well settled that even after acceptance of a bid, but before the execution of the contract contemplated by the parties, a bidder for a public contract who makes a remedial mistake in his bid may, by giving notice thereof before material change of position to the detriment of the offeree, obtain rescission of the bid or relief against its enforcement. Shepard v. United States (1942), 95 Ct. Cl. 407; Bromagin & Co. v. City of Bloomington (1908), 234 Ill. 114, 84 N.E. 700; Board of School Commissioners of City of Indianapolis v. Bender (1904) 36 Ind. App. 164, 72 N. E. 154; Board of Regents of Murray State Normal School v. Cole (1925), 209 Ky. 761, 273 S.W. 508; Kutsche v. Ford (1923) 222 Mich. 442, 192 N.W.

714; School Dist. of Scottsbluff v. Olson Construction Co. (1950) 153 Neb. 451, 45 N.W. 2d 164; Barlow v. Jones (1913), N.Y. Ch., 87 Atl. 649; Harper v. City of Newburgh (1913), 159 App. Div. 695, 145 N.Y.S. 59; Donaldson v. Abraham (1912), 68 Wash. 208, 122 P. 1003.

In applying the rules that should govern the granting of equitable relief for remediable mistake the principal difficulty with which we are confronted is determining the effect of negligence on the part of one claming equitable relief for his own mistake. Of course the very word "mistake" itself may cannote some degree of negligence, and when the cases speak of an honest mistake and one made without negligence, it is difficult to determine just what kind of negligence is meant. In a footnote on page 794 of 52 A.L.R. 2d, it is stated:

"The term 'negligence,' or its equivalent, in this connection generally means ordinary negligence, which will not necessarily bar granting equitable relief. Otherwise qualified, it generally means carelessness or lack of good faith in calculation which violates a positive duty in making up a bid, so as to amount to gross negligence, or wilful negligence, when it takes on a sinister meaning and will furnish cause, if established, for holding a mistake of the offending bidder to be one not remediable in equity. It is thus distinguished from a clerical or inadvertent error in handling items of a bid, either through setting them down or transcription."

In the case of Dixon v. Morgan, 154 Tenn. 389, 285 S.W. 558, the court points out that only culpable negligence will preclude relief, and for negligence to be culpable it must be due to the failure to perform some duty, that it is not a failure of duty to one's self, but to another, that constitutes culpable negligence, and that a mistake in the computation of the cost of construction work in order to make a bid therefor does not indicate such culpable negligence as will preclude equitable aid to rescind the contract where to sustain it would give the other party an unconscionable advantage.

In the case of Board of Regents v. Cole, 209 Ky. 761, 273 S.W. 508, the contractor by mistake omitted a $22,000 item in submitting his bid, and it was there held that he was entitled to have the contract rescinded, the court saying that there was no doubt the contractor had made an honest mistake and it did not appear that he was guilty of culpable negligence. It was such an error as any businessman might make.

In Barlow v. Jones (N.J. Ch.) 87 Atl. 649, it was held the contractor was entitled to have his bid for public work cancelled where in making up his bid he had inadvertently omitted an item of $28,000. It appeared that he was in ill health and subjected to considerable pressure at the time, and under the circumstances the court said the mistake was one which might be made by a careful man, and certainly one which could not be characterized as gross negligence.

Several of the appellate courts of this state have had occasion to comment on this question. Brown v. Levy, 29 Texas Civ. App., 389, 69 S.W. 255, no writ history; Edwards v. Trinity & B. V. Ry. Co., 54 Texas Civ. App. 334, 118 S.W. 572, writ refused; Warren v. Osborne, 154 S.W. 2d 944, error refused w.o.m.; State v. Scholz Bros., 4 S.W. 2d 661, no writ history; Clem Lumber Co. v. Marty, 26 S.W. 2d 319. The Scholz case indicates that any negligence will prevent rescission. However, in that case it appears that the elements of remediable mistake probably were not present. From the court's opinion it appears that the mistake may have resulted only in the contractor's not making a profit on his contract. Furthermore, it appears that the contractor, after his bid had been accepted, had signed the principal contract before notifying the owner of the mistake. In the Osborne case reformation was granted where one party had knowledge of the other's mistake. The court, in allowing reformation, though the party seeking it had ben found negligent in the mistake, said:

"The term 'mistake' involves some element of negligence which may or may not be excusable under the circumstances."

In the Edwards case the court held that rescission could be granted even though the complainant had been guilty of negligence in making a unilateral mistake, quoting from Pomeroy as follows:

"* * * As a second requisite, it has sometimes been said in very general terms that a mistake resulting from the complaining party's own negligence will never be relieved. This proposition is not sustained by the authorities. It would be more accurate to say that where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be [a] violation of legal duty, a court of equity will not interpose its relief; but even [with] this more guarded mode of statement, each instance of negligence must depend

to a great extent upon its own circumstances. It is not every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be that the negligence must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby. * * * 2 Pom. Eq. Juris. (3rd Ed.) Sec. 856."

The Clem Lumber Co. v. Marty case held that the lumber company was not entitled to equitable relief from its mistake, but in that case the owner, after accepting the lumber company's bid on material, purchased a lot and entered into a contract with a carpenter to build a building on said lot and actually used part of the supplies furnished by the lumber company before any notice of mistake was given. The elements of a remediable mistake were not present. And finally, the case of Brown v. Levy was a suit by a contractor to recover a $500.00 deposit put up with his bid. The claimed mistake was a $10,000.00 error in addition in submitting a $64,000.00 bid. The next lowest bid was $76,000.00. He alleged generally the elements required to show remediable mistake, but it is doubtful that the loss of the $500.00 deposit was a material detriment under the circumstances. The trial court sustained a general demurrer to the contractor's petition and the Court of Civil Appeals affirmed.

4 We think the authorities, both from this state and from other jurisdictions, clearly indicate that in cases of this kind ordinary negligence will not necessarily bar the granting of equitable relief. Generally it is only when negligence amounts to such carelessness or lack of good faith in calculation which violates a positive duty in making up a bid, taking into consideration the nature of the transaction and the position of the opposite contracting party, that equitable relief will be denied.

5 We think that if we accept as true the facts as testified to by Hicks, Taylor's estimator, relating how the error was made and under the circumstances in which it was made do not indicate such negligence as would bar Taylor from equitable relief. He says that he was severely limited as to time, and that it was necessary to compile the bids of many subcontractors, which were being received almost up to the deadline when the bid was to be submitted. He was rushed to get the estimate completed in time for submission. The work sheets, consisting of eight pages, were made a part of his deposition. From an examination of them it appears that the completed estimate as prepared by

Hicks showed the cost to the contractor to be $598,326.86. He took the estimate to Mr. Taylor's office, who looked at it and wrote down on the last page of the estimate "6% add." This was to be the contractor's profit. Hicks correctly computed the 6% as $35,899.61. but when he added it to the estimate figure, in adding from right to left he failed to carry a digit to the last figure, and came out with $534,226.47 instead of $634,226.47. Taylor then wrote down the figure $534,175, and told Hicks to submit that as the bid. Hicks filled that figure in on a form and took it personally to Arlington, where the bids were to be submitted, leaving his work sheets in his office. After the bids were opened the Board called Hicks in and advised him that he was the lowest bidder by some thirty-five or thirty-six thousand dollars, and asked him if he was sure his bid was correct. He said that it was. He expressed his opinion that probably the reason they were low was because the next lowest bid provided for a little over four hundred days to complete the contract, and Taylor's bid provided for over five hundred days. The School Board accepted the bid immediately thereafter. The president of the School Board was notified of the contractor's mistake by nine o'clock the next morning.

While these facts, if true, would not necessarily bar equitable relief where the elements of remediable mistake are present, still we think that the trial court's summary judgment should not have been granted, for the reason that the record shows that the only witness testifying with reference to the error was Hicks, who was an interested witness. The general rule is that the testimony of an interested witness does no more than raise a fact issue to be determined by the jury. While there are exceptions to the rule, it seems settled that when testimony comes from an interested party and is of such a nature that it cannot be readily contradicted if untrue, an issue relating to the credibility of the witness is presented. Further, the petitioner Taylor did not appear before the Board in his request for withdrawal of his bid, nor did he file an affidavit or submit his deposition in support of his motion for summary judgment, nor excuse his failure to do so. Consequently, it cannot be said as a matter of law that he did not know of the error, and on the issue of whether a mistake was in fact made, we think the court should, under the circumstances, have had the benefit of his testimony before granting him the equitable relief which he seeks. We therefore conclude that there was an issue of fact to be determined by the jury as to whether a mistake was in fact made.

Of course each of the elements of the test applicable to a

remediable, unilateral mistake is a fact issue to be submitted to a jury unless it can be resolved by the court under the undisputed evidence. As we have heretofore said, the question of negligence gives us the most difficulty. We have said that every negligence will not necessarily bar equitable relief in a case of this kind. It follows, therefore, that the trial court, guided by the principles herein stated, should determine from the facts and circumstances under which the mistake was made whether there is raised such issue of negligence that should be submitted to the jury. If there is raised an issue of fact as to whether the mistake was the result of such carelessness or lack of good faith in calculation which violate the positive legal duty in making a bid, then the court should inquire whether such mistake was wholly caused by the failure to exercise at least that minimum degree of care which a public authority in the position of the School District may reasonably expect all of its bidders to exercise in the light of the circumstances of the transaction and the practice of the trade. 3 Pomeroy's Equity Jurisprudence, 5th Ed., p. 340.

Although we remand the case for different reasons than those set out by the Court of Civil Appeals in its opinion, its judgment remanding the cause for a new trial is affirmed.

Opinion delivered April 27, 1960.

MR. JUSTICE GRIFFIN, concurring.

I agree in the affirmance of the judgment of the Court of Civil Appeals, but not on the grounds stated.

In my opinion, the Court of Civil Appeals stated the correct rule of law when it said, "* * * The general rule is that though a contract has been formed by the acceptance of an offer—in view of the legal control of the objective appearance of the mistaken contractor's acts,—nevertheless the contractor may avoid the obligations of the contract if he can prove by clear and convincing evidence that the mistake was non-negligent and that the Board suspected that a mistake had been made * * * ."

In this case had the contractor used one of the adding machines in his office to total his figures and had he checked his work on the adding machine slip, an error would have been discovered.

Public bodies have a right to expect that those who submit

bids have submitted correct bids. It is the duty of the public body to let the bids to the lowest bidder who is financially responsible. In the case at hand, the School Board called the attention of the petitioner's representative to the fact that petitioner was some $35,000 to $40,000 low and asked the representative if they were sure they could do the job on the bid rendered. It was only after receiving such assurance that petitioner's offer was accepted and the bid was let to petitioner. I think the equities are on the side of the School District and that the reasons given by the Court of Civil Appeals correctly declare the law when applied to the facts of this case. See also the case of State Highway Commission v. Canion, Texas Civ. App., 1952, 250 S.W. 2d 439, er. ref., n.r.e.

Opinion delivered April 27, 1960.

MR. JUSTICE GREENHILL, joined by JUSTICES WALKER and NORVELL, concurring.

I concur with the result reached by the majority.

It seems to me that under the peculiar facts of this case, there are two issues of fact: (1) was a mistake in fact made; and (2) was the mistake, if any, a remediable one.

The majority holds that the first issue is raised. It also says, "Generally it is only when negligence amounts to such carelessness or lack of good faith in calculation which violates a positive duty in making a bid, taking into consideration the nature of the transaction and the position of the opposite party, that equitable relief be denied." In accordance with that principle, the second issue should inquire whether such mistake was caused by the failure to exercise at least that minimum degree of care which a public authority, in the position of the district, may reasonably expect all of its bidders to exercise, in the light of the circumstances of the transaction and the practices of the trade. 3 Pomeroy's Equity Jurisprudence (5th ed.) 340.

As I construe the opinion of the majority, it says the second issue *might* be raised upon the trial. Under the record as it reaches us, I think the issue was raised; and if like evidence be adduced on another trial, the issue should be submitted.

Opinion delivered April 27, 1960.

Rehearing overruled June 1, 1960.