[redacted]

**The FLORSHEIM CO. et al.**

**v.**

**Edward MILLER et al.**

**Civ. A. No. TX-82-127-CA.**

United States District Court,
E.D. Texas,
Texarkana Division.

Oct. 18, 1983.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Marc R. Stanley, Robert H. Thomas, Strasburger & Price, Dallas, Tex., for plaintiffs.

Norman Russell, John R. Mercy, Atchley, Russell, Waldrop & Hlavinka, Texarkana, Tex., for defendants.

MEMORANDUM ORDER

JOE J. FISHER, District Judge.

This is a declaratory judgment action, brought by a building contractor and her surety, against the County Judge and Commissioners, in their official capacities, of Bowie County. The contractor made a $1,078,000.00 mistake in tabulating her estimate of the cost of a building for the county, making her low bidder by $443,000.00. The court here considers her motion for summary judgment.

The contractor advised the county of the mistake the day after bid opening and withdrew her bid. The county refused the withdrawal and "accepted" the bid in spite of the mistake. Naturally, the contractor refused to sign the formal contract with the county. Without advertising for a second set of bids and without incurring additional expenses, the county accepted the second lowest bid and entered a construction contract.

She filed this action the following week, seeking declaratory judgment that the "contract" be rescinded, or avoided, without her being liable to the county. Her bonding company, FIDELITY & DEPOSIT CO. OF MARYLAND, joined the action to limit its exposure under the 5% bid bond submitted with the proposal. The Defendants counter-claimed, seeking the difference between the Plaintiff's actual bid and the second lowest bid. They seek, at least, to force the bonding company to pay 5% of the Plaintiff's bid as provided in the bond. In either event, however, the contractor would be ultimately liable for the amount of any judgment for the counter-claimant.

The facts are simple and essentially undisputed. The Plaintiff worked on the estimate for three weeks but could not complete it until nearly the last minute before the deadline. Although that appears to be an unbusinesslike procedure, it is the custom in the industry. Generally, contractors find it impossible to tally an estimate earlier than the last hour or two before the bid is due. Subcontractors and suppliers invariably wait until then to submit their quotations to the general contractors, fearing their bid will be "shopped," or "peddled," if given earlier. In her final tabulation of subtotals, the Plaintiff correctly wrote the mechanical and electrical cost of $1,197,779.00 on the worksheet. But she inadvertently entered only $119,779.00 when adding the subtotals. That this happened is manifest from a glance at the actual worksheet. The Defendants do not dispute that this error occurred as described. Rather, they contest the consequences of the miscalculation.

■ The law in Texas, if not clear, is at least directly on point. The court can grant equitable relief—by ordering recission of the contract—for such a unilateral mistake when the conditions of a remediable mistake are present, to wit:

(1) the mistake is so consequential that enforcing the contract would be unconscionable;

(2) the mistake relates to a material feature of the contract;

(3) the mistake was made regardless of the exercise of ordinary care;

(4) the parties can be restored to the *status quo ante*, i.e., rescission will not prejudice the Defendant except for the loss of its bargain. *Taylor v. Arlington Independent School District*, 335 S.W.2d 371, 373 (Tex.1960); *Colvin v. Baskett*, 407 S.W.2d 19 (Tex.Civ.App.1966—no writ).

The facts of *Taylor* are similar: a final computation error resulted in a 20% underbid; the contractor withdrew his bid after verbal acceptance but before signing a formal contract; the owner accepted the next lowest bid; and no additional expenses resulted from the rescission.

■ Testing the facts of this case against the *Taylor* rule, the Plaintiff argues that:

(1) the $1,078,000.00 mistake on a 5.5 million dollar job is consequential enough to make enforcement unconscionable;

(2) the cost of mechanical and electrical subcontracts is a material feature of the contract;

(3) the mistake was made despite the use of ordinary care, considering the practice in the industry and the time pressure of completing a bid involving over 100 subcontractors' and suppliers' bids;

(4) rescission would not prejudice the county beyond loss of a bargain since it bore no additional costs of rebidding or negotiating.

In *Taylor* the Court declined to affirm the summary judgment for the contractor—remanding instead—because the only witness testifying to the error was the contractor's estimator, an interested witness. The court was concerned whether enough evidence was in the record to prove that a mistake was in fact made. That issue is not disputed in this case.

Of course, each of the four elements above is a fact issue for the jury, *unless* the court can resolve it from undisputed evidence. *Id.* at 376. Here the only arguably disputable issue is the "ordinary care" question, element (3) above. Not surprisingly, the Defendants insist that an issue of fact is raised as to whether the careless-

ness of the Plaintiff bars relief; the Plaintiff urges the contrary.

Unfortunately, in deciding *Taylor*, the Court did not make clear what kind of mistake bars or justifies equitable relief. In its frequent reference to "remediable mistake," the Court seemed to adopt a negligence standard: "the mistake must have been made regardless of the exercise of ordinary care ..." *Id.* at 373. Setting so high a standard of care for clerical errors, however, negates the doctrine of equitable rescission. Any conceivable mistake made in preparing an estimate would be detected, if not prevented initially, through the exercise of ordinary care. To verify and reverify one's computations requires so little effort relative to the possible consequences of error that failure to do so is necessarily negligence. The court cannot conceive in this context of an example of a non-negligent mistake. But clearly, the doctrine of equitable rescission presupposes some category of excusable mistake. If not a mistake like Mrs. Florsheim made, then what kind at all?

In *Taylor* the Court tacitly recognized that point by noting that "ordinary negligence will not necessarily bar the granting of equitable relief." *Id.* at 375. Generally, the Court noted, to bar relief the negligence must amount "to such carelessness or lack of good faith in calculation which violates a positive duty in making up a bid ..." Taylor's clerical error, the Court conceded, "do[es] not indicate such negligence as would bar Taylor from equitable relief." *Id.*

Having clarified the negligence standard and offered an example of an excusable mistake, the Court concluded its opinion with an apparent contradiction. It noted that the fact of Taylor's plainly negligent miscalculation, "if true, would not necessarily bar equitable relief where the elements of remediable mistake are present ..." In other words, a mistake due to the failure to exercise ordinary care is excusable so long as the mistake was made regardless of the exercise of ordinary care. The court can only agree that "the question of negligence gives us the most difficulty." *Id.* at 376.

Because the Florsheim error is essentially indistinguishable from Taylor's, the court is inclined to grant the Plaintiff's motion in spite of the obscurity of the *Taylor* opinion. It appears that the mistake of Mrs. Florsheim epitomizes those which justify equitable relief. The business records of the contractor show how the error occurred. The Plaintiff had worked for several days on the estimate, had taken over 100 quotations, and otherwise prepared her bid conscientiously and according to accepted industry practice. The court concludes from the evidence submitted that her efforts were reasonably diligent, made in good faith, and without culpability. Her actions evidence the exercise of at least the minimum degree of care a public authority can expect from bidders.

Ultimately the county's claim for relief hangs on its bald assertion that failing to double check an act of addition is such culpable negligence as should cost the Plaintiff $443,000. The Defendants offer no examples of what constitutes a breach of positive duty to a public authority. The court can imagine, for example, situations where an irresponsible contractor might hastily make a "hip pocket" estimate on a project, hoping to be lucky but prepared to claim mistake if he bid too low. Such lack of care in preparing an estimate—amounting to virtually no care whatever—if not culpable negligence or fault, at least "amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." A mere slip on the calculator keyboard, however, hardly falls to that level of carelessness or indifference as should break the back of a responsible contractor. See, e.g., Restatement (Second) of Contracts, sec. 157 comment a, illustration 1 (1981) (citing *Taylor v. Arlington Independent School District*, 335 S.W.2d 371 (Tex.1960)).

Moreover, enforcement of the contract would be manifestly unconscionable, seriously damaging the Plaintiff's enterprise while heaping an undeserved windfall on the county. Indeed, the county is no worse off after rescission than had the Plaintiff never bid the job, or, for that matter, made

a computation error in the opposite direction, or no mistake at all. The county simply loses a windfall. It contracted for a building at the lowest accurate bid, notwithstanding the Plaintiff's mistake.

The court doubts that the counter-claimants have raised an issue of bad faith, unfair dealing, or breach of positive duty by the Plaintiff in the preparation of her bid. Given the confusing discussion of negligence in *Taylor*, however, the court concludes that the safer course is to submit the issue to the jury. Accordingly, the jury must decide "whether [the] mistake was wholly caused by the failure to exercise at least that minimum degree of care which a public authority ... may reasonably expect all of its bidders to exercise ..." *Taylor* at 376. It is, therefore

ORDERED, ADJUDGED, and DECREED that the Motion for Summary Judgment of the Plaintiff be and is hereby DENIED, and this cause set for trial during the current term of court.