**B.D. HOLT CO. d/b/a Holt Company of Texas, Appellant,**

v.

**OCE, Inc., Appellee.**

No. 04–96–00988–CV.

Court of Appeals of Texas, San Antonio.

March 31, 1998.

G. Wade Caldwell, Dain A. Dreyer, Martin, Drought & Torres, Inc., San Antonio, for Appellant.

Mark M. Ferguson, Kevin M. Warburton, Thomas J. Walthall, Jr., Gardner & Ferguson, Inc., San Antonio, for Appellee.

Before RICKHOFF, LOPEZ and DUNCAN, JJ.

## OPINION

RICKHOFF, Justice.

This case turns on what constitutes the defense of remediable mistake in the supplier-subcontractor context.

B.D. Holt Co.'s bid for a unique back-up generator set was used by OCE in figuring its bid for the electrical subcontracting work on a building at the University of Texas. Holt's bid contained what it characterizes as a typographical error; as a result, its offer to supply the generator motor was $100,000 short. After OCE's bid was submitted to Spaw Glass Contractors and other general contractors, but just before it was selected as the winning bid, Holt discovered the error and withdrew its offer. OCE maintained its bid with the error and won the contract. Holt then refused to perform at its bid price and OCE purchased the component from another supplier. Citing *Traco Inc. v. Arrow Glass Co.*, 814 S.W.2d 186 (Tex.App.—San Antonio 1991, writ denied), OCE sought recovery of the difference between Holt's original bid and the second-best bid on a promissory estoppel theory. The jury found for OCE on its promissory estoppel theory and against Holt on its defense of remediable mistake. In one point of error Holt attacks the trial court's decision to submit OCE's

jury questions, the trial court's failure to grant its motions for directed verdict and for judgment *non obstante veredicto,* and the sufficiency of the evidence to support the jury's verdict. All these points are predicated on the theory that Holt established its defense of remedial mistake as a matter of law. We agree and reverse the trial court's judgment and render in favor of Holt.

### MULTIFARIOUS POINTS

As a preliminary matter, OCE argues Holt has presented a multifarious point of error and that we should decline to reach the merits of the appeal. *See Henry S. Miller Management Corp. v. Houston State Assocs.,* 792 S.W.2d 128, 131 (Tex.App.—Houston [1st Dist.] 1990, writ denied). We disagree. Holt's complaints center on the trial judge's ruling on its sufficiency argument; therefore, using one point of error does not violate the spirit of our rules. TEX.R.APP.P. 38.1 (formerly TEX.R.APP.P. 74(d); *see General Resources Org., Inc. v. Deadman,* 907 S.W.2d 22, 30 (Tex.App.—San Antonio 1995, writ denied, 932 S.W.2d 485 (Tex.1996)).

### STANDARD OF REVIEW

Remediable mistake is an affirmative defense which Holt bore the burden of establishing at trial. *Zapatero v. Canales,* 730 S.W.2d 111, 114 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.). Therefore, to prevail on appeal, Holt must demonstrate that the evidence conclusively established all vital facts in support of the issue. *See Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex. 1989). In reviewing a challenge to a negative jury finding on an issue on which the appellant had the burden of proof, we employ a two-prong test. We first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary; if there is no evidence to support the finding, we then examine the entire record to determine if the contrary proposition is established as a matter of law. Only if both prongs are satisfied will we sustain the point of error. *Sterner,* 767 S.W.2d at 690; *Meyerland Community Improvement Ass'n v. Temple,* 700 S.W.2d

263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

### FACTS

The facts are largely undisputed. Holt wanted to bid on the backup generator for a new microbiology building at the University of Texas; it bid to OCE and other electrical contractors. OCE wanted to be the electrical subcontractor for the building; it bid to Spaw Glass and other general contractor candidates. Bids from general contractors were due at the University of Texas on March 16, 1995 at 2 p.m.; the bids were to be opened at 4 p.m. About noon, Holt sent OCE and other electrical contractors a bid with the $100,000 mistake. Holt's employee notified all the contractors it sent bids to of the mistake about 2:45 p.m. and faxed a letter revoking the bid about 3 p.m. OCE employees testified that the mistake was not so large that a trained observer would know that Holt must have made a mistake in its bid.[1] They also testified that industry custom prohibited altering bids after submission. Spaw Glass's president testified that it could change its bid (which, of course, was built in part on OCE's bid) after the 2 p.m. deadline only at risk of losing its bid bond.

OCE does not contend that the discrepancy was anything other than a mistake. Our case will turn on how the law will treat this mistake.

### REMEDIABLE MISTAKE

■■■ Holt contends it established its defense of remediable mistake as a matter of law. The equitable defense of remediable mistake is available when: 1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; 2) the mistake relates to a material feature of the contract; 3) the mistake must have been made regardless of the exercise of ordinary care; and 4) the parties can be placed in status quo in the equity sense, i.e., recission must not result in prejudice to the other party except for the loss of his bargain. *James T. Taylor and Son, Inc. v. Arlington Indep. School Dist.*, 160 Tex. 617, 335 S.W.2d 371, 372–373 (1960). The question of whether remediable mistake exists in a case is a question of fact for the jury, unless it is established by undisputed evidence. *Id.* 335 S.W.2d at 376.

In *Taylor*, the supreme court established a broad remedy for a bidder's inadvertent mistake:

> It seems to us to be well settled that even after acceptance of a bid, but before the execution of the contract contemplated by the parties, a bidder for a public contract who makes a remediable mistake in his bid may, by giving notice thereof before material change of position to the detriment of the offeree, obtain rescission of the bid **or relief against its enforcement.**

*Taylor*, 335 S.W.2d at 373–374 (emphasis added). The highlighted language makes it clear to us that this defense is intended to extend to promissory estoppel cases such as this one.

■■■ We believe the first three prongs of the remediable mistake doctrine are unquestionably met in this case. Price is undeniably a material feature of the agreement; a difference of $100,000 in a contract of this size would be unconscionable if enforced; and we believe this is the type of error the doctrine of remediable mistake was intended to address. The question, then, becomes whether OCE's bid to the general contractor using Holt's erroneous bid was a material change of position that would take this case out of the equitable test. We believe the answer is provided by the cases and reflected in the jury question submitted in this case.

The jury question on Holt's remediable mistake defense read:

> Is HOLT entitled to rescission of its quote due to a remedial [sic] mistake?
>
> "Remedial mistake" occurs when:

---

1. The bid submitted by Holt was for $147,610; the correct price was $247,610. The chief estimating officer for OCE testified he would have been more inclined to question Holt's bid if it had been the correct price than the bid actually submitted. This entire process was complicated by the fact that the bid was for a natural gas-fueled backup generator, which testimony showed is a fairly rare requirement. The substitute contractor provided the generator set for $172,337.

a. The mistake is of so great a consequence that to enforce the contract as made would be unconscionable;

b. The mistake relates to a material feature of the contract;

c. The mistake must have been made regardless of the exercise of ordinary care;

d. The parties can be placed in status quo in the equity sense, i.e., recision [sic] must not result in prejudice to the other party except for the loss of his bargain.

Ordinary negligence does not mean a lack of ordinary care. The negligence must amount to such carelessness or lack of good faith which violates a positive duty in making up a bid. Also, the prejudice to OCE, if any, means some prejudice other than the fact that OCE's bid was accepted by Spaw Glass.

Answer "yes" or "no". No

The trial court thus instructed the jury that it could not consider the fact that OCE's bid was accepted by Spaw Glass, the general contractor, in deciding harm. Yet the only harm shown by the evidence is the fact that OCE had to cover, at a higher price, for Holt's error; this was the case solely because OCE's bid was accepted by Spaw Glass. There is no evidence, for example, that OCE suffered delay damages because it was forced to buy from another. There is therefore no evidence to support the jury's "no" answer to this question. We must now look to the record to see if there is evidence to support the converse.

Stephen Traynor, branch manager of OCE's San Antonio office and project manager for the University of Texas job, admitted that OCE had suffered no damages other than the ability to acquire the generator for the erroneous price. We find this sufficient to establish as a matter of law that OCE was not prejudiced other than losing the benefit of its bargain. The benefit that OCE is seeking to claim is performance of the contract at the mistaken price. In other words, they are disappointed because they were deprived of the benefit of their bargain. This is exactly the measure of damages that was sought by the disappointed school board in *Taylor*. *Arlington Indep. School Dist. v. James T. Taylor & Son, Inc.*, 322 S.W.2d 548, 549 (Tex.Civ.App.—Fort Worth 1958), *aff'd on other grounds*, 160 Tex. 617, 335 S.W.2d 371 (1960).

Moreover, the equities in our case are more compelling than those in *Taylor*. First, in *Taylor* the district called the contractor to make sure that his figures were right; only after being reassured did it accept the bid. Here Holt withdrew its bid before it knew the bid had been accepted and before the bids were opened. Indeed, OCE did not find out it was the low bidder until the next day, and a final, written contract was not signed until almost five months later. Secondly, the contractor in *Taylor* actually submitted a bid bond with its bid, which purported to guarantee acceptance. No such consideration is involved here.

OCE argues that this case is distinguishable from *Taylor* because OCE is a subcontractor to the general contractor, Spaw Glass. While the school district in *Taylor* truly suffered only disappointed expectations, OCE contends, here it is bound by its bid to Spaw Glass. However, we think this a distinction without a difference. The measure of damages is the same in both cases—the disappointed parties are seeking to enforce performance at the mistaken price.[2] And, as stated above, we believe the language of *Taylor* shows that the remediable mistake defense was meant to cover this situation as well.

*Traco*, relied upon by OCE, is also distinguishable. In *Traco*, a supplier convinced a subcontractor to use its sliding glass doors after reassuring the subcontractor that its bid was not low and that the doors would meet specifications. *Traco*, 814 S.W.2d at 191. More than a month later, after the bids were opened, the supplier informed the subcontractor that its doors would not in fact meet specifications. *Id.* The subcontractor

---

**2.** A question is raised in our minds as to whether OCE could have justifiably relied upon Holt's bid in its promissory estoppel cause of action when it knew Holt's bid was erroneous before the bids were opened. However, because Holt did not brief or argue this issue, we do not reach it.

prevailed in a bench trial. *Id.* at 187. We note that it was not the supplier who notified the subcontractor of the problem; the subcontractor heard rumors that there was a problem with the doors and contacted the supplier, who confirmed the rumor. *Id.* at 191. The supplier knew its bid was the winning bid when the mistake was discovered. *Id.* Most importantly, the supplier in *Traco* did not plead the equitable defense of remediable mistake. *Id.* at 188.

### CONCLUSION

Promissory estoppel is an equitable remedy; remediable mistake is an equitable defense. We are not convinced equity requires the enforcement of a typographical error against a party that acted promptly to mitigate its effect. Subcontractors in OCE's position will instead have to rely on non-legal sanctions, such as the harm suffered to a bidder's reputation, to discipline careless bidders.

We hold Holt established its remediable mistake defense as a matter of law. Holt's single point of error is therefore sustained and we reverse the judgment of the trial court and render judgment that OCE take nothing.