DEMOS BROTHERS GENERAL CONTRACTORS, INCORPORATED
*vs.* CITY OF SPRINGFIELD & others.

Hampden.   October 29, 1947. — December 9, 1947.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Springfield. Municipal Corporations*, Contracts, Officers and agents.
*Contract*, With municipality, Validity. *Statute*, Construction, Super-
sedure.

The provision of § 5 of St. 1864, c. 165, making water commissioners of
Springfield "subject to such ordinances . . . as the city council may,
from time to time, ordain and establish," so far as it would have
made the commissioners subject to ordinances other than those
authorized in § 4 of St. 1880, c. 30, was inconsistent with that statute
and was repealed by § 5 thereof.

The provision of § 4 of St. 1880, c. 30, that the city of Springfield might
by ordinance "prescribe the mode . . . of the payment of all bills
contracted by" the board of water commissioners, did not make appli-
cable to contracts of the board an ordinance requiring the mayor's
signature to all city contracts exceeding $1,000.

A majority of the board of water commissioners of Springfield estab-
lished under St. 1880, c. 30, has power without the signature of the
mayor to make and execute a valid contract involving the payment
by the city of more than $1,000, notwithstanding a general ordinance
requiring the signature of the mayor to all city contracts exceeding
that amount.

A contract by the board of water commissioners of Springfield for the
construction of a pipe line, which was awarded after competitive bid-
ding, was not rendered invalid because before the contract was exe-
cuted the board permitted the successful bidder to strike out a con-
dition in the bid submitted and to correct mathematical errors therein:
there was no statutory limitation on the method of awarding such a
contract by the board.

BILL IN EQUITY, filed in the Superior Court on August
23, 1946.

The case was heard by *Donnelly*, J.

In this court the case was submitted on briefs.

*E. H. Lyman, Jr., & L. F. Henin*, for the plaintiff.

*C. V. Ryan*, for the defendants Wallace and another.

*S. A. Moynahan*, City Solicitor, & *C. D. Sloan*, Assistant
City Solicitor, for the defendants city of Springfield and
another.

WILKINS, J. The plaintiff brings this bill in equity under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, seeking an adjudication as to the validity of a written contract for the construction of a pipe line to be used in connection with the water system of the defendant city of Springfield. The contract, entitled "Little River Water Supply Contract No. 19 Transmission Main," bears date of July 1 1946, and is signed by the plaintiff and by the defendants Wallace and McQuade, constituting a majority of the board of water commissioners of the city. It has not been signed by the defendant mayor, who is the third member of the board. The judge ruled the contract to be invalid without the mayor's signature. From a final decree dismissing the bill, the plaintiff and the defendants Wallace and McQuade appealed. The case is here with report of the evidence.

The underlying question is whether contracts of the board of water commissioners are subject to the following provisions of the revised ordinances: Chapter 2, § 83. "In all cases where the amount of any contract made with the city . . . shall exceed one thousand dollars, the contract shall be in writing, shall be approved by the city auditor as to available appropriation, and shall be signed by the mayor and a majority of the committee, commission or board, in charge of the work on the part of the city, and after being signed by the parties, no such contract shall be altered in any particular unless a majority of said committee, commission or board shall signify their assent thereto in writing, under their respective signatures, indorsed on said contract, and approved by the mayor." Chapter 1, § 15. "All deeds, conveyances, leases and other instruments, which shall be given by the city, and which to be valid in law must be signed, sealed and acknowledged, shall be signed and acknowledged by the mayor, on behalf of the city, and shall be by him sealed with the common seal of the city."

When the city was incorporated (see St. 1852, c. 94), the water supply was in the charge of a private company. See St. 1848, c. 303; St. 1850, c. 192. By St. 1864, c. 165, the

city was empowered to acquire the franchise and property of that company (§ 2), and provision was made for three water commissioners, to be appointed by the city council, who should "be subject to such ordinances, rules and regulations, in the execution of their said trust, as the city council may, from time to time, ordain and establish, not inconsistent with the provisions of law" (§ 5). By St. 1872, c. 345, entitled "An Act to supply the city of Springfield with water," there was established a board of three water commissioners, to be elected by the city council, in whom should be vested the extensive "rights, powers and authority" granted to the city by that act (§ 5), which contained no provision making the board subject to ordinances. By St. 1873, c. 75, it was provided, among other things, that the power granted by St. 1872, c. 345, § 6, relating to the issue of water bonds, should be exercised by the city council and not by the board of water commissioners (§ 6). By St. 1880, c. 30, the existing board of water commissioners was abolished (§ 1), and its "rights, powers and duties" were vested in a new board to consist of two members elected by the city council and the mayor ex officio (§ 2). Section 4 of that act was: "Said city may by ordinance prescribe the mode of collecting all water rents and other money that may become due the city on account of the water department, and of accounting for the same to the city treasurer; and of the payment of all bills contracted by said department. The city auditor shall have free access to and audit all books and accounts of said board. The annual report of said board shall be addressed to the city council and printed in the municipal register." There also was a provision repealing all inconsistent acts (§ 5). There was no provision other than those quoted from § 4 relative to the board being made subject to ordinances.

We think that it is clear that the Legislature in creating the present board of water commissioners has not shown an intent that the exercise of its functions might be controlled by ordinances (other than those permitted by St. 1880, c. 30, § 4), and in particular has not authorized the subjection of the board to what in practical effect would be a

veto by the mayor if action of the majority of the board could be frustrated by the withholding of his signature to contracts in reliance upon the ordinances in question. See *Pearsons* v. *Ranlett*, 110 Mass. 118, 125. If the Legislature had intended that the city council should continue to have the full power to make ordinances binding upon the water board, as originally contained in St. 1864, c. 165, § 5, there would have been no occasion to give the council the limited power to enact such ordinances which is conferred by St. 1880, c. 30, § 4. *Spence, Bryson, Inc.* v. *China Products Co.* 308 Mass. 81, 88. We cannot avoid concluding that the provision in St. 1864, c. 165, § 5, that the water commissioners should "be subject to such ordinances . . . as the city council may . . . establish" is one of the inconsistent acts repealed by St. 1880, c. 30, § 5.

There is no merit in the contention that the ordinance requiring the mayor's signature to contracts is applicable to contracts of the water board under the power to "prescribe the mode . . . of the payment of all bills contracted by said department" contained in St. 1880, c. 30, § 4.

The city and the mayor rely principally upon *Mayor of Haverhill* v. *Water Commissioners of Haverhill*, 320 Mass. 63. That case, however, is not in point, because it dealt with the effect not of an ordinance, but of a statute of statewide application to municipalities to which, it was held, the Haverhill water commissioners were subject. We state parenthetically that the precise question there presented, namely, whether the city treasurer was entitled to receive the water receipts, could not arise in the case of Springfield, where, unlike the case of Haverhill, the statute creating the water board expressly provides that the city treasurer shall control those funds. St. 1880, c. 30, § 4. The decisive matter here is not whether, as happens to be the case with the respective statutes relating to Springfield and Haverhill, the Legislature has described the water board as a department of the city, but that there is no act enabling the city council of Springfield to impose upon the water board these ordinances restricting its management and operation.

Certain cases relied upon by the city and the mayor are

distinguishable. In *Clarke* v. *Fall River*, 219 Mass. 580, the question related to a garbage collection contract and the city charter expressly required the signature of the mayor to contracts in excess of a certain amount. In *Burt* v. *Municipal Council of Taunton*, 272 Mass. 130, there was the proposed purchase of a fire engine, a subject matter which had not been confided by the Legislature to an independent board in large part beyond the scope of ordinances to affect its administration.

The ordinances in question being inapplicable, there is nothing requiring the signature of the mayor to give validity to the contract. By St. 1880, c. 30, § 2, the board acquired "all the rights, powers and duties" of the predecessor board under St. 1872, c. 345, § 5, which provided that "a majority of said commissioners shall be a quorum for the exercise of the powers and duties prescribed by this act." Compare G. L. (Ter. Ed.) c. 4, § 6, Fifth.

Two minor objections remain for consideration. One is that, after the plaintiff's bid was submitted and before the contract was executed, the water board allowed the plaintiff to strike out a so called "escalator clause," or condition accompanying its bid, reading, "This bid is made subject to change in case of increased cost in labor or material." The other objection is that at the same time the plaintiff was allowed to correct an absurd series of mathematical errors, wherein it had written in words in many items of its bid the total cost as the unit cost, accompanied in each case by the correct unit cost in figures. For example, item 9 of the bid read, "For furnishing and laying 48-inch steel pipe, the sum of Six Hundred Ninety-Nine Thousand & Three Hundred dollars and no cents ($27.00) per lineal foot." In the information for bidders it was stated, "In case of discrepancy between the words and the numerals, the words shall govern."

The short answer to these objections is that, unlike *Conners* v. *Lowell*, 246 Mass. 279, there was no statutory limitation on the method of awarding such a contract by the water board. See *Mayor* v. *County Commissioners of Hampden*, 141 Mass. 74; *Slocum* v. *Medford*, 302 Mass. 251,

254. It was not even obliged to ask for competitive bids, although it did so in this instance. See *Lowell* v. *Stiles*, 232 Mass. 341, 343. If the board desired the elimination of the "escalator clause," a step entirely for the benefit of the city, or the correction of obvious clerical or mathematical errors, there was no legislative restriction on its doing so before awarding the contract.

The final decree is reversed, with costs in this court to the appealing parties. A decree is to be entered adjudging that the contract bearing the signatures of two water commissioners, constituting a majority of the board, is valid. As the bill contains prayers for payment for work performed and for damages for breach of contract, which the plaintiff still insists upon, the case is to be further heard in the Superior Court.

*So ordered.*