**STATE HIGHWAY COMMISSION et al.**
**v. CANION.**

No. 10063.

Court of Civil Appeals of Texas.
Austin.

July 2, 1952.

Rehearing Denied July 30, 1952.

Price Daniel, Atty. Gen., William S. Lott and V. F. Taylor, Asst. Attys. Gen., for appellant.

Jones, Herring & Jones, by Herman Jones, Austin, for appellee.

ARCHER, Chief Justice.

This is an appeal by the State Highway Commission and its officers from a judgment of the District Court, which allowed appellee to withdraw his bid on State Highway Road Construction Project No. S–1825 (1), Trinity County, Texas, and which perpetually enjoined and restrained appellants from forfeiting appellee's bid guaranty deposit check in the sum of $4,000. Appellee applied for a temporary injunction to restrain appellants from cashing his proposal guaranty check. By agreement, the case was tried on its merits at the time set for a hearing on the temporary injunction.

The appellee filed his bid on November 14, 1951, on which day the bids were opened; later, the same day, appellee discovered that he had made a mistake and had omitted the one dollar before his bid upon 18,682 cubic yards of foundation course, which resulted in bids of 63¢ and 40¢ which were intended to be $1.63 and $1.40, respectively, which mistake reduced appellee's bid by $18,682. This mistake was called to the attention of the Highway Commission the following day and before the bids were accepted. The appellants on November 19 or 20 accepted the bid and mailed appellee a proposed contract.

The bid of appellee was accompanied by a cashier's check for $4,000 as a guaranty deposit, which under the rules of the appellants would have been forfeited unless appellee entered into the contract.

Appellants contend that the trial court was in error in holding that the attempted acceptance of the bid was null and void because of the mistake of appellee in per-

forming it, and in enjoining appellants from forfeiting the guaranty deposit and in ordering the deposit check returned to appellee, and further in overruling appellants' Special Exception and finally in refusing to make additional findings of fact as requested by appellants.

The appellee's position is that he made an honest mistake, which occurred in spite of his exercise of reasonable care and which mistake was made known to appellants before they acted upon his bid.

The court made findings of fact and conclusions of law, which are not excepted to or objected to by appellants.

The fact findings are that the State Highway Department furnished bidders a form bid sheet upon which all were required to bid, and such sheet did not show the lump sum bid but a unit price upon each item. That plaintiff prepared his bid on November 13, 1951, and filed it on the following day prior to 10 a. m., the hour set for opening the bids. That in preparing his bid plaintiff had determined to make a bid of $1.63 per cubic yard on the 12th item and a bid of $1.40 per cubic yard on the 13th item, and that through an error in calling or copying the bid items designated 12th and 13th the price was $.63 and $.40, respectively, the one dollar being omitted in each instance, which produced a difference of $18,682.

The court further found that at the time plaintiff filed his bid he did not know of the error above set out; that plaintiff is an experienced contractor and has been engaged in the business of estimating, bidding and constructing jobs for the State Highway Department, and was familiar with the rules and regulations of said Department; that the error did not result from lack of care on the part of plaintiff or his assistants, but such error occurred notwithstanding the exercise of reasonable care and precaution and the bid was the result of an honest, good faith mistake, which occurred through inadvertence, and that the bid did not express the intentions of plaintiff and would not have been filed as it was but for such mistake.

Plaintiff was familiar with the instructions to bidders concerning the withdrawal of proposals which provide as follows:

"A bidder may withdraw his proposal provided his request in writing to do so is in the hands of the official indicated in the Notice to Contractors by the time set for opening of proposals.

"A bidder may change the unit prices in his proposal provided his request to do so is submitted in writing and is in the hands of the State Highway Engineer prior to the time set for opening of proposals. Requests by telephone or telegraph for changes in bid prices or for withdrawal of proposals will not be considered."

The court found that plaintiff discovered his error on November 14, 1951, when the bids were opened, and wrote a letter to the defendants advising them of such error, which was received by defendants on November 16, 1951, and in such letter requested that his bid be not considered and that he have his check returned to him; that plaintiff was advised by an assistant to the Highway Engineer that the Commission would meet in Austin on the following November 19th and 20th, and bids would be considered and requested plaintiff to be available on those two days in the event the Commission desired to contact him with reference to his bid and his request that it not be considered. At the meeting of the Commission the plaintiff's verified letter was called to the attention of the Commission before the bids were acted on, and plaintiff was not requested to appear before the Commission and no investigation as to the accuracy of the representations in the request was made. That the Commission declined to permit plaintiff to withdraw his bid, but undertook to accept same and mailed a contract to plaintiff based on the mistaken bid. That plaintiff declined to execute the contract and the Commission would have forfeited the guaranty check but for the injunction, and such forfeiture would have resulted in substantial loss to plaintiff for which he would have no reasonable adequate remedy at law. The findings were that except for the two unit prices, which were bid by plaintiff through mistake, the bid was not unbalanced.

Prior to the defendant Commission's attempted acceptance of plaintiff's mistaken

bid, plaintiff had not only advised the Commission of his mistake and sought to withdraw his bid, but also, plaintiff had advised the Commission that it would be impossible for him to perform the work under the mistaken bid both because he was not financially able to perform at the mistaken figure and because he could not make bond as required by the Commission. Whether the defendant Commission undertook to accept the mistaken bid in the hope of getting the bargain resulting from the mistake or solely for the purpose of placing itself in a position to forfeit plaintiff's bid guaranty deposit, either result would have been in equitable and oppressive toward the plaintiff.

The court concluded as a matter of law that:

1. Plaintiff was entitled to withdraw his bid offer which was the result of an honest mistake, occurring in spite of the exercise of reasonable care, since, before the offer was acted upon by the defendant State Highway Commission, plaintiff sought to withdraw the offer and made the mistake known to the Commission.

2. The attempted acceptance of plaintiff's offer by the defendant Commission was ineffectual to create a contract between plaintiff and defendant Commission, because there was no meeting of the parties' minds since plaintiff's mistaken bid was not his true offer but was the result of a mistake which fact was known to the defendant Commission at the time of the attempted acceptance.

3. The defendants received nine bids, at least three of which could have been retained for acceptance by defendants for a period of thirty days from the bid opening under the regulations of the Commission.

4. Since the attempted acceptance by the defendant Commission of plaintiff's mistaken offer was ineffectual to create a contract with plaintiff, the Commission had and has no legal right to forfeit or withhold plaintiff's bid guaranty deposit because of his failure to execute the tendered contract, but plaintiff was and is entitled to have the deposit returned to him.

5. If the plaintiff's bid guaranty deposit is forfeited by defendants and placed beyond their control, plaintiff will suffer real and substantial loss which will be irreparable and for which plaintiff has no adequate remedy at law.

We believe that evidence reasonably supports the findings of the court and that the judgment is a proper one.

We will set out in some detail from the record the evidence as adduced by both the plaintiff and defendants in the trial of the case.

The appellants contend that the State Highway Commission, by accepting appellee's low bid, had the legal right to forfeit and cash the guaranty check if Canion refused to enter into a contract to construct the road, and that it was error for the court to restrain the Commission from forfeiting the said deposit.

Further the appellants say that the case will turn on whether a bidder on a Texas Highway project is bound by the provisions and general requirements of the Standard Specifications for Road and Bridge Construction, which are admittedly made a part of each and every bid proposal and contract by reference, or whether a bidder may go to court contending that he made a mistake in calculation and have his bid withdrawn and his proposal guaranty returned, contrary to the provisions set out in the Standard Specifications.

The Standard Specifications provide in part:

"1.14 *Proposal Guaranty.* The security designated in the proposal and furnished by the bidder as a guaranty that the bidder will enter into a contract if awarded the work.

"2.3 *Examination of Plans, Specifications, Special Provisions and Site of Work.* Before filing a bid, the bidder shall examine carefully the proposal, plans, specifications, special provisions, and the form of contract to be entered into for the work contemplated. He shall examine the site of work and satisfy himself as to the conditions which will be encountered relating to the character, quality, and quantity of work to be performed and materials to be furnished. The filing of a bid by

bidder shall be presumptive evidence that he has complied with these requirements.

"2.4 *Preparation of Proposal.* The bidder shall submit his proposal on the form prescribed. The blank spaces in the proposal shall be filled in for each item for which a quantity is given as may be required by the proposal for a completed work, and the bidder shall state the price (written in ink in words) for which he proposes to do each item of work. The proposal shall be signed in ink by the person or persons making or authorized to make the bid.

"2.8 *Withdrawal of Proposals.* A bidder may withdraw his proposal provided his request in writing to do so is in the hands of the official indicated in the Notice to Contractors by the time set for opening of proposals.

"A bidder may change the unit prices in his proposal provided his request to do so is submitted in writing and is in the hands of the State Highway Engineer prior to the time set for opening of proposals. Requests by telephone or telegraph for changes in bid prices or for withdrawal of proposals will not be considered.

"3.2 *Award of Contract.* The award of the contract, if it be awarded, will be to the lowest reasonable bidder. The award, if made, will be within thirty (30) days after the opening of the proposal, but in no case will an award be made until the responsibility of the bidder to whom it is proposed to award the contract has been investigated.

"3.3 *Return of Proposal Guaranties.* Certified·or cashier's checks of· the three lowest bidders may be retained until after the contract has been awarded and bond made. ·Certified or cashier's checks of all except the three lowest bidders will be returned within forty-eight (48) hours after opening bids.

"3.6 *Failure to Execute Contract.* Should the successful bidder refuse or neglect to execute and file the contract and bond within fifteen (15) days after written notification of the award of the contract, the Proposal Guaranty filed with the bid shall become the property of the State, not as a penalty, but as liquidated damages."

Appellee's Proposal to the State Highway Commission, Contract 475–8–1, Project No. S–1825(1), Highway F.M. 287, County of Trinity (Plaintiff's Ex. No. 3), on page 1, states:

"Accompanying this proposal is a certified or cashier's check on a State or National Bank of the State of Texas payable to the order of the State Highway Commission for Four Thousand Dollars." .

Pages 1 to 3 of the proposal sheet contain appellee's bid with his bid prices written in ink in words and in his own handwriting. On one Item 218, 12,682 cubic yards foundation course, appellee bid "No dollars and Sixty-three cents per unit" and on another Item 218 for 6,000 cubic yards foundation course (stock-piled) he bid "No dollars and forty cents per unit."

The Commission accepted Canion's low on November 19 or 20, 1951, and tendered him a contract which he refused to execute on the ground that he had made a mistake in copying the figures from his worksheet to the proposal sheet.

Appellee contends that since he made a good faith mistake in copying the figures from his work sheet on to the bid sheet in two places, he has the right to withdraw his bid. Appellants contend that the provisions of the Standard Specifications are binding on appellee and, since he did not follow the procedure set out therein concerning withdrawal of bids, he could not withdraw his bid after it was publicly opened and accepted.

We believe that since appellee's bid, according to the evidence, and the findings of the trial court, was the result of a mistake of fact and which mistake resulted despite the exercise of reasonable care and diligence, and such mistake and its attendant results were made known to the Commission before it made its award and that equity

will permit appellee to rescind his offer and will return the guaranty deposit to him, and that to permit appellants to accept the bid and to forfeit the guaranty deposit would be inequitable and oppressive to Canion.

There is no question but that Canion made a mistake in inserting the correct figures in the case of the two items and that before the Commission had in anywise considered or acted upon the several bids tendered in with the road contract involved in this case, it had before it the letter verified by Canion requesting to withdraw his bid and was entirely cognizant with all the facts and circumstances surrounding Canion's bid. Further there is no question but what the bid filed by Canion was far below the cost of performing the work, since the next lowest bid was some $16,000 higher than that of appellee, being that of R. W. McKinney who bid $66,811.13, the highest bid was approximately $72,000. It is therefore to be noted that the bid of Canion was twenty-five per cent less than the average bid made, and the difference was so apparent that the Highway Engineer thought it was a bargain. Mr. Green testified that the job was readvertised after the time for Canion to execute his contract, and that it would come up in January, 1952, following the trial which was had in December, 1951.

In Corbin on Contracts, Vol. 3, Sec. 609, p. 436, the rule is stated:

"Suppose, first, a case in which a bidding contractor makes an offer to supply specified goods or to do specified work for a definitely named price, and that he was caused to name this price by an antecedent error of computation. If, before acceptance, the offeree knows, or has reason to know, that a material error has been made, he is seldom mean enough to accept; and if he does accept, the courts have no difficulty in throwing him out. He is not permitted 'to snap up' such an offer and profit thereby. * * * a just and reasonable man will not insist upon profiting by the other's mistake."

The rule to the same effect in 43 Am.Jur., Sec. 63, p. 805, is stated as follows:

"As a general rule, equitable relief will be granted a bidder for a public contract where he has made a material mistake of fact in the bid which he submitted, and upon the discovery of that mistake acts promptly in informing the public authorities and requesting withdrawal of his bid or opportunity to rectify his mistake, particularly where he does so before any formal contract is entered into."

Pomeroy's Equity Jurisprudence (5th Ed. 1941), Vol. 3, Sec. 870a.

In Moffett H. & C. Co. v. City of Rochester, 178 U.S. 373, 20 S.Ct. 957, 961, 44 L.Ed. 1108, with facts similar to those in this case, the Supreme Court stated:

"This was inequitable, even though it was impelled by what was supposed to be the commands of the charter. It offered or forced complainant the alternative of taking the contract at an unremunerative price, or the payment of $90,000 as liquidated damages. We do not think such course was the command of the statute or the board's duty."

The Supreme Court quoted with approval from the opinion of the Circuit Court, 2 Cir., 91 F. 28, the following:

" 'The bill proceeds upon the theory that the bid upon which the defendants acted was not the complainant's bid; that the complainant was no more responsible for it than if it had been the result of agraphia or the mistake of a copyist or printer. In other words, that the proposal read at the meeting of the board was one which the complainant never intended to make, and that the minds of the parties never met upon a contract based thereon. If the defendants are correct in their contention there is absolutely no redress for a bidder for public work, no matter how aggravated or palpable his blunder. The moment his proposal is opened by the executive board he is held as in a grasp of steel. There is no remedy, no escape. If, through an error of his clerk, he has agreed to do work worth $1,000,000 for $10, he must be held to

the strict letter of his contract, while equity stands by with folded hands and sees him driven into bankruptcy. The defendants' position admits of no compromise, no exception, no middle ground.' "

In Kemper Const. Co. v. City of Los Angeles, Cal.App., 224 P.2d 861, affirmed in 37 Cal.2d 696, 235 P.2d 7, by the Supreme Court of California in 1951, involving facts very much like those in this case, presented authorities in disposing of the case, and we believe to be not only persuasive but we accept it as a controlling case; and while we do not quote from this decision the holdings of the Court, we do say that the Court took up and disposed of the contentions of the appellant adversely, and favorable to those of the appellee herein.

This is not an instance where the bid had been accepted and a solemn contract made before there was any mention of a mistake in the bid, and such contract had been fully executed and consummated, but one in which the bidder had made fully known to the Commission his mistake and before the Commission had in anywise accepted the bid. This case is distinguishable from those cited by appellant in this respect.

Mr. Canion testified fully concerning the making of his estimates, in visiting the project and in acquainting himself with all of the conditions and circumstances attendant on making his bid, and that he was familiar with the rules of the Commission and understood the proposal, but that in some manner to him unknown he made an honest mistake in inserting the amounts concerning which this case grew out of.

The employees of the Commission testified as to the receipt of the letter from Canion requesting withdrawal of his bid before it was acted on; that the Commission knew that Mr. Canion had been requested by an employee of the Commission to be available on November 19 and 20 if the Commission should desire to question him, but that Canion was not called. The Commission did not retain the checks of the next two low bidders as it had a right to do, and made no effort to let the contract of the next low bidder or made any inquiry of such next low bidder if he would accept a contract if tendered to him.

The engineer for the Commission testified that he examined all of the bids and thought the Canion bid was a bargain; that there was no evidence of a mistake; that at times all bids are rejected and readvertisements made and there would be some incidental costs; that if the Commission made a mistake and knows of it before an actual award is made they could throw out all bids.

As we have heretofore said, the trial court heard all of the testimony, and based thereon made his fact findings and conclusions of law and rendered his judgment, and we believe that he was justified in so doing.

We have been favored with exhaustive briefs by both parties, and have reviewed all of the authorities cited, whether we have mentioned them or not, and believe that the weight of such authorities is that the enforcement of such forfeiture would be unjust, inequitable and oppressive to appellee.

The judgment of the trial court is affirmed.