**William E. GOETZ et al., Appellants,**

v.

**BOARD OF REGENTS OF the STATE TEACHERS COLLEGES OF TEXAS, now Board of Regents, State Senior Colleges, et al., Appellees.**

No. 11669.

Court of Civil Appeals of Texas.

Austin.

April 23, 1969.

Rehearing Denied May 14, 1969.

Second Rehearing Denied May 28, 1969.

Earle Cobb, Jr., San Antonio, for appellants.

Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Hawthorne Phillips, Executive Asst. Atty. Gen., John Reeves, Asst. Atty., Gen., Austin, for appellees.

HUGHES, Justice.

This suit was brought by appellants Wm. E., Howard C. and Walter E. Goetz, partners, against the Board of Regents of the State Teachers Colleges of Texas, now Board of Regents, State Senior Colleges, the individual members of such Board in their official capacities, acting for and in behalf of Southwest Teachers College in San Marcos, Texas, and the State of Texas, to recover on a contract allegedly executed by said Board and appellants for the construction of additions to the Library and Science buildings at Southwest Teachers College in San Marcos.[1]

Trial to the court without a jury resulted in a judgment that appellants take nothing by their suit.

We reverse the judgment of the trial court and render judgment for appellants.

The principal facts were stipulated and we quote from the stipulation:

"1. Prior to August 12, 1958, Defendant (Appellee Board) with proper authority requested bids for construction and improvements on the Science Building and Library Building at Southwest Texas Teachers College of San Marcos, Texas.

2. The bids were to be submitted not later than 10 o'clock a. m. on August 12, 1958.

3. On August 12, 1958, a number of bids were submitted and opened. Plaintiff's (Appellant's) bid of Eight Hundred Sixty-four Thousand Eight Hundred Eighty-eight and no/100 Dollars

1. Appellants obtained legislative permission to bring this suit. Acts 1963, Reg.Sess., 58th Leg., p. 1691.

($864,888.00) was the lowest, and the bid of M. Z. Collins Construction Company of Eight Hundred Ninety-one Thousand Three Hundred Thirty-three and no/100 Dollars ($891,333.00) was the second lowest bid.

4. By the provisions of Paragraph 10, page 15, of Defendant's 'Specifications,' Defendant was 'not obligated to accept the lowest bid or to accept any other bid.'

5. On August 12, 1958, a few hours after the bids had been opened, and before any bid had been accepted by Defendant, Plaintiffs notified Defendant that an error had been made in Plaintiff's bid and that Plaintiff's bid was Twenty Six Thousand One Hundred Fifty-three and 65/100 Dollars ($26,-153.65) too low.

6. On August 14, 1958, at the official meeting of Defendant Board, Defendant adopted the following motion:

'Upon motion of Regent Barnes, seconded by Regent Ramsey, it was ordered that:

The low base bid of $858,888.00, plus Alternate No. 7 in the amount of $6,000.00 submitted by Wm. E. Goetz & Sons, of San Antonio, Texas, for the additions and alterations to the Library and Science Buildings at Southwest Texas State Teachers College at San Marcos, Texas, be accepted and that the President of the Board be authorized to sign the contract in the amount of $864,888.00—contract reading as follows:

(contract omitted)

7. On August 14, 1958, at the official meeting of Defendant Board, the following motion was adopted:

'Upon motion of Regent Barnes, seconded by Regent Brown, it was ordered that:

The Board cooperate and work with the Attorney General's Department and see if there is a legal way to pay an additional $17,000.00 on the contract with Wm. E. Goetz & Sons. It is the concensus of this Board that the Board will make such payment if and when it is found it can legally pay the additional $17,000.00.

(Regent Barnes stated the motion just made accepting the low bid of Wm. E. Goetz & Sons, was made because of an honest mistake that was made by Wm. E. Goetz and Sons wherein the masonry work on the Science Building was not included and about which they knew nothing of when they submitted the bid. The cost of the masonry work would be approximately $26,000.00. The sub-contractors have advised that they will absorb $6,000.00 of that loss and Wm. E. Goetz & Sons have advised that they will absorb enough to bring the amount down to $17,000.00. I made the motion on the theory that they were morally entitled to reimbursement for that amount, in the event it can be done legally.)

8. Pursuant to the minutes referred to in stipulations 6 and 7, and subsequent thereto, Plaintiff and Defendant signed a written agreement made and entered into the 14th day of August, 1958, the same being the agreement attached to Plaintiff's Original Petition.

9. The Plaintiffs subsequently began and completed the work specified in the written agreement signed by the parties to the satisfaction of Defendants and Defendants paid to Plaintiffs the total compensation less $100.00 specified in the written agreement signed by the parties.

10. Defendants believing that they are under no legal obligation to pay the addition Seventeen Thousand and no/100 Dollars ($17,000.00) sum have failed and refused to pay the additional Seventeen

Thousand and no/100 Dollars ($17,-000.00) sum."

Mr. Walter E. Goetz testified that the resolution quoted above was adopted before he or the Board executed the contract.

Mr. Goetz also testified with reference to a conference between him and school officials in San Marcos the day before the Board meeting in Austin. We quote from this testimony:

"Q Now Mr. Goetz, at this meeting that began at 10:00 o'clock on August 13th in San Marcos, did you make any request concerning the withdrawal of your bid and the release of you from any obligation?

A Yes, I did. I made the request in the presence of Dr. Flowers, Mr. Adams, who is the manager, and Mr. Harvey Smith, Sr., and my brother, Howard Goetz.

Q All right at this time, had the bids been accepted?

A No, it had not.

Q All right, and what was their response to your request to withdraw the bid?

A Well, Mr. Smith said that he didn't know whether I could withdraw the bid without forfeiture of the bond, but he said that he would take it up—let's see, that would be the next morning. We had a meeting at 10:00 o'clock with the Board of Regents, State Board of Regents in Austin, the next morning."

Mr. Goetz also testified:

"Q Okay, now, Mr. Goetz, so there won't be any question about it, I am going to ask you again did you request and desire to withdraw your bid on the original payment?

A At three different times, I did.

Q All right, was such request refused?

A Yes, it was, unless I forfeited the bid bond.

Q All right, did you negotiate with the Board of Regents concerning the $26,000 mistake?

A I did.

Q And did the two parties arrive at a figure of $17,000, and agree upon it?

A That is right.

Q For the mistake?

A That is right.

Q All right, was this done prior to the execution of any written contract?

A Yes, it was. It was prior to the acceptance of the contract.

Q All right, would you have accepted any contract, or signed any contract, or entered into any contract without the agreement of the Board of Regents regarding the $17,000 payment?

A I would not."

There is some discrepancy in the testimony regarding the advice which the Assistant Attorney General may or may not have given Mr. Goetz regarding his right to withdraw his bid if there was an innocent mistake in his bid. We do not regard this issue as controlling and will not attempt to resolve it. The trial court found that both witnesses on this issue were truthful.

The trial court made findings of fact consistent with the facts stipulated. We copy only Finding No. 10:

"Subsequent to said motion to pay the $17,000, and in reliance upon the oral discussion to this effect as well as the action of the Board, Plaintiff executed the written contract with Defendants in the amount of the erroneous bid."

The Conclusions of Law of the trial court were that, "The contract between the parties was the written contract, drawn in

accord with Plaintiffs' bid. Defendants agreed to pay an additional $17,000 to the contract price, if they could legally do so. Under those circumstances Defendants could not do so, and have not. Nor may Plaintiff recover."

Our decision that appellants are entitled to recover is based upon well settled principles of law and equity.

■ There was no contract between the parties prior to the discovery of the mistake, its recognition by the Board and the compromise evidenced by the undisputed testimony and the adoption of the resolution by the Board. This resolution became a part of the formal contract under the rule that contemporaneous written instruments relating to the same subject are to be construed together, and several distinct stipulations are to be construed so as to give effect to all. Rule 21, Art. 3713, Vernon's Ann.Civ.St. The plain effect of the resolution was to add $17,000.00 to the contract price.

There is no dispute as to the authority of the Board to contract for the improvements contemplated by the contract in suit. See Art. 2647, V.A.C.S.

Even if the bid had been accepted by the Board after knowledge of the mistake, appellants could have withdrawn their bid without penalty. State Highway Commission v. Canion, 250 S.W.2d 439, Tex.Civ. App. Austin, writ ref. n. r. e. (1952). See James T. Taylor and Son Inc. v. Arlington Ind. Sch. Dist., 160 Tex. 617, 335 S.W. 2d 371, 1960, where relief was indicated even though the mistake was not discovered until after the bid was accepted. The equities of a situation such as we have here are graphically stated in Corbin on Contracts Vol. 3, Sec. 609, p. 436, quoted in Canion and which we re-quote:

"Suppose, first, a case in which a bidding contractor makes an offer to supply specified goods or to do specified work for a definitely named price, and that he was caused to name this price by an antecedent error of computation. If, before acceptance, the offeree knows, or has reason to know, that a material error has been made he is seldom mean enough to accept; and if he does accept, the courts have no difficulty in throwing him out. He is not permitted 'to snap up' such an offer and profit thereby. * * * a just and reasonable man will not insist upon profiting by the other's mistake."

■ Commendably, the Board did not attempt to take advantage of the bona fide mistake made by appellants. They corrected this mistake subject only to their legal right to do so. This caution is also commendable. We are satisfied that there was no legal impediment to the just and honorable settlement of this matter made by the Board and appellants.

We need not discuss the rights of appellants had the contract been formally executed by the parties before the discovery of the mistake.

Appellees contend that the contract between the parties was limited to its formal written agreement and to the exclusion of the resolution of the Board, and based on this assumption they say that provisions of our Constitution, Secs. 44 and 51 of Art. 3, Vernon's Ann. St., would be violated if the payment of the additional $17,000.00 is allowed. Since we have disagreed with appellees in their major contention it is unnecessary that we discuss the dependent issues.

The judgment of the trial court is reversed and judgment is here rendered that appellants recover of and from the Board of Regents, State Senior Colleges, and its members in their official capacities only, the sum of $17,000.00 with interest thereon from this date at the rate of 6% per annum.

Reversed and rendered.

## ON MOTION FOR REHEARING

■ Appellants and appellees have both filed motions for rehearing. Appellants

complain that interest was not allowed from the date the money was due or, in the alternative, from the time their suit was filed.

The record does not show when the money was due.

We overrule appellants' motion on the ground that the agreement between the parties, as shown in our opinion, was that appellees would pay " * * * if and when it is found it can legally pay the additional $17,000.00. * * *" This was ascertained for the first time when we decided this case.

Appellees' motion is also overruled.