**BOARD OF REGENTS OF the STATE TEACHERS COLLEGES OF TEXAS, now Board of Regents, State Senior Colleges et al., Petitioners,**

**v.**

**William E. GOETZ et al., Respondents.**

**No. B–1599.**

Supreme Court of Texas.

Feb. 11, 1970.

Rehearing Denied March 18, 1970.

Crawford C. Martin, Atty. Gen., John Reeves, Asst. Atty. Gen., Austin, for petitioners.

Earle Cobb, Jr., San Antonio, for respondents.

SMITH, Justice.

This declaratory judgment suit was filed by Wm. E. Goetz, Howard C. Goetz and Walter E. Goetz, building contractors, as plaintiffs, against the Board of Regents of the State Teachers Colleges of Texas, as

defendant, seeking to have declared and adjudged their right to recover the sum of $17,000.00 in addition to the sum stated in a contract entered into on August 14, 1958, wherein they agreed to construct additions to the Library and Science Buildings at Southwest Teachers College in San Marcos, Texas.

The following alleged facts are undisputed: The plaintiffs alleged that pursuant to the defendant's request for bids for the construction and improvements on the Science and Library Building at the Southwest Texas Teachers College in San Marcos, they submitted a bid in the sum of $864,888.00; immediately after the bids were opened on the morning of August 12, 1958, and before any bids had been accepted, plaintiffs notified the defendant that, because of an error, their bid was $26,153.-65 too low; after negotiations between the parties, the plaintiffs and subcontractors agreed to absorb enough of this sum to reduce the alleged loss to $17,000.00, and after the defendant adopted a resolution to pay the sum of $17,000.00 in excess of the amount of plaintiffs' bid, provided such sum could legally be paid, the plaintiffs and defendant signed a written contract which provided for the payment of $858,-888.00, rather than the intended bid of $885,041.65. Thereafter, the construction work was completed and all sums of money have been paid, except the sum of $17,000.-00. Plaintiffs in their prayer for relief asked "that on final hearing of this cause that the Court declare and adjudge the plaintiffs made a remediable mistake in their original submission of their bid for which they were entitled to be relieved and concerning which plaintiffs were not obligated to perform such work for the amount of their bid of $858,888.00, as submitted, and bear the loss of its mistake, to-wit, $26,153.65, and that the defendants can lawfully pay to the plaintiffs said sum of $17,000.00, etc." The suit was defended on the ground that the relief sought was prohibited by the provisions of Sections 44 and 51 of Article III of the Constitution of

Texas, and that the conditional resolution to pay an additional sum of $17,000.00 formed no part of the contractual obligation created under the August 14, 1958 agreement. A non-jury trial resulted in a judgment that plaintiffs take nothing. The Court of Civil Appeals reversed the trial court's judgment and rendered judgment for the plaintiffs. 440 S.W.2d 892. We reverse the judgment of the Court of Civil Appeals and affirm that of the trial court.

The record reflects that the bid submitted was erroneous in the sum of $26,153.65, as alleged by plaintiff, because the cost of certain masonry work was mistakenly omitted. The trial court made findings of fact and conclusions of law. The court found as a fact that in reliance upon the resolution to pay the $17,000.00, plaintiffs and defendant executed the written contract in the amount of the erroneous bid and, thereafter, completed the work specified in the written agreement to the satisfaction of the defendant. The trial court concluded, as a matter of law, that the defendant could not legally pay the $17,000.00 in addition to the contract price of $864,-888.00. The correctness of this holding is the sole question before this Court.

The Court of Civil Appeals has held that the resolution in regard to the additional payment of $17,000.00 became a part of the formal contract, just as though incorporated therein, upon the theory that contemporaneous written agreements relating to the same subject are to be construed "so as to give effect to all."

We cannot agree. The subject matter of the negotiations leading to the adoption of the resolution by the Board of Regents was specifically dealt with in the bid as well as in the contract which was signed by the parties. The bid and the final written contract to construct and improve the Science Building and Library Building at a cost of $864,888.00 included the masonry work. The conditional agreement to pay the sum of $17,000.00 in addition to that agreed upon as reflected in the

contract was for the same masonry work. Such agreement is inconsistent with the final agreement entered into between the parties. These extrinsic negotiations are ineffective under the parol evidence rule which precludes the giving of legal effect to extrinsic negotiations which have been specifically dealt with in the final writing. IX Wigmore on Evidence, 3rd ed. 1940, §§ 2430, 2443 and 2444. See Messer v. Johnson, (Tex.Sup.1968), 422 S.W.2d 908; Jackson v. Hernandez, 155 Tex. 249, 285 S.W.2d 184 (1955); Bradshaw v. McDonald, 147 Tex. 455, 216 S.W.2d 972 (1949); Vansickle v. Watson, 103 Tex. 37, 123 S.W. 112 (1909); 2 McCormick & Ray, Texas Law of Evidence, §§ 1602, 1634.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

CALVERT, C. J., concurs in the result.

Dissenting opinion by McGEE, J., in which HAMILTON, J., joins.

REAVLEY, J., not sitting.

McGEE, Justice (dissenting).

I respectfully dissent.

A more complete statement of facts is found in the opinion of the Court of Civil Appeals, 440 S.W.2d 892. It is important to note that unlike most cases involving the parol evidence rule, the facts of this case are *undisputed*. The intention of the parties is evidenced by the motion of the Board and the plaintiff's action in reliance upon it.

On August 14, 1958, at the official meeting of the defendant Board, the following motion was entered in its minutes:

"Upon motion of Regent Barnes, seconded by Regent Brown, it was ordered that:

The Board cooperate and work with the Attorney General's Department and see if there is a legal way to pay an additional $17,000.00 on the contract with Wm. E. Goetz & Sons. It is the concensus of this Board that the Board will make such payment if and when it is found it can legally pay the additional $17,000.00.

(Regent Barnes stated the motion just made accepting the low bid of Wm. E. Goetz & Sons, was made because of an honest mistake that was made by Wm. E. Goetz and Sons wherein the masonry work on the Science Building was not included and about which they knew nothing of when they submitted the bid. The cost of the masonry work would be approximately $26,000.00. The sub-contractors have advised that they will absorb $6,000.00 of that loss and Wm. E. Goetz & Sons have advised that they will absorb enough to bring the amount down to $17,000.00. I made the motion on the theory that they were morally entitled to reimbursement for that amount, in the event it can be done legally.)"

Thereafter, in reliance upon said motion, the plaintiff executed the construction contract in the amount of the original bid.

The trial court made certain findings of fact that: (1) but for the additional agreement evidenced by this (above quoted) motion, the plaintiff would not have executed the contract; and (2) the "compensation" was granted or promised prior to the time that the plaintiff entered into the contract.

The plaintiff has fully performed the written contract. The Board claims that it has made payments in accordance with the written contract price and cannot pay more. The Board refuses to pay the additional $17,000.00 claimed by the plaintiff.

As I see it, there is only one question before the Court. Can the Board legally pay its $17,000.00 obligation as identified by the motion of August 14, 1958? I would hold that such payment is legal and due.

This was first determined by the Court of Civil Appeals on April 23, 1969.

It is petitioner Board's contention that it made an award to respondents in the amount of the written bid and executed a contract in the amount of said bid, and that the Board could not create a binding legal contract on behalf of the State to pay an amount above the price stated in the bid and written contract. Petitioners point out that the parties did not *sign* any contract for the additional $17,000.00. Petitioners argue that since respondents did not withdraw the bid, but instead signed and performed the written contract drawn in accordance with their written bid, its legal obligation is limited to the written contract price only.

Petitioners cite subdivision 7 of Article 2647. Tex.Rev.Civ.Stat.Ann. (1925). This article provides, in part:

> "All appropriations made by the Legislature for the support and maintenance of State Teachers' Colleges, for the purchase of land or buildings for the use of such schools, *for the erection or repair of buildings*, for the purchase of apparatus, libraries or equipment of any kind or for any other improvement of any kind, *shall be disbursed under the direction and authority of the board of regents; * * *.*" (Emphasis petitioners').

Petitioner Board concedes that such statute does not require the Board to let contracts on a competitive bid basis. Petitioner refers to various statutes requiring certain state agencies to require competitive bidding. Article 2647, relied upon by petitioners, does not require the Board of Regents to let construction contracts on a competitive basis, nor does it require contracts to be signed or written.

The purpose of competitive bidding is to obtain the lowest price for the construction of public buildings. It should be noted in this case that the contractor's amended bid, including the $17,000.00 correction, was $15,445.00 lower than the next lowest bid and $54,112.00 lower than the second lowest bid. There is no claim of fraud or that such additional sum has not been earned.

Although the job was advertised for bids, Paragraph 19 of instructions to bidders provides: "The owner does not obligate himself to accept the lowest, or any other bid." Other bidders would have no basis for objection and have made none. There was no obligation to accept the original bid. Having made a bona fide mistake in the sum of $26,153.65, the contractor could have withdrawn his bid or rescinded the contract. Taylor & Son, Inc. v. Arlington Independent School District, 160 Tex. 617, 335 S.W.2d 371 (1960); State Highway Commission v. Canion, 250 S.W.2d 439 (Tex.Civ.App.—Austin 1952, writ ref'd n.r.e.); Jordan v. City of Beaumont, 337 S.W.2d 115 (Tex.Civ.App.—Beaumont 1960, writ ref'd n.r.e.). To induce him to undertake the work outlined in the construction contract, the contractor and the Board agreed upon a compromise figure of $17,000.00, payment of which was to be made when the Board found "it can legally pay the additional $17,000.00." The Board's action resulted in a lower bid than the correct bid, not a higher one; the net saving being the difference between $26,000.00 and $17,000.00.

Where competitive bids are required by statute or ordinance, bids containing bona fide mistakes may be withdrawn, or in certain instances contracts let thereon may be rescinded, but such bids or contracts cannot thereafter be changed in substance under normal circumstances. McQuillan, Municipal Corporations, Section 29.68 (Rev. ed. 1966).

However, the latter authority cites Demos Bros. General Contractors v. Mayor of City of Springfield, 322 Mass. 171, 76 N.E.2d 166 (1947), which is more representative of the facts before us. In that case there was *no* statute requiring the Water Board to seek competitive bids, but it did do so. Thereafter, the Board allowed the successful bidder to strike out an

escalator clause and to correct obvious mathematical errors before awarding the contract to the same bidder. The court said, page 168: "The short answer to these objections is * * * there was no statutory limitation on the method of awarding such a contract by the water board. * * * It was not even obliged to ask for competitive bids, although it did so in this instance." In the companion case, 322 Mass. on page 176, 76 N.E.2d on page 169, it was held that the petition for mandamus to require the mayor to sign the contract was correctly dismissed. As the contract is valid without the mayor's signature, there is no occasion for the writ to issue.

The majority opinion neglects to pass on the only question in the case. I am of the opinion that the Board had authority to negotiate in any manner that it saw fit to obtain the lowest cost for the construction of the project by a reliable contractor.

As shown above, there is no statutory requirement that the Board of Regents obtain competitive bids or follow the normal procedures as would be required had the State Highway Commission been involved.

After the error in the bid was discovered, Goetz indicated that he would like to withdraw his bid. He and the Assistant Attorney General, Mr. John Reeves, who was advising the Board of Regents, subsequently had several conferences. However, whether or not Goetz would have to forfeit the bond or deposit was not answered to the satisfaction of the parties. There never was a meeting of the minds on this question.

The Board wanted Goetz to do the work. A compromise was worked out whereby Goetz's bid was reduced from $26,000.00 on these items to $17,000.00. The motion on August 14 was passed pursuant to this agreement, and the same day the contract was executed by Goetz in reliance upon the compromise agreement.

The Board prepared the contract and it was approved by the Attorney General, with the understanding, evidenced by its written recorded motion, that the sum of $17,000.00 over and above the amount in the written contract would be paid, *if legally possible.*

All during these negotiations, the Attorney General apparently was relying on the *Canion* case (involving the State Highway Commission) which he interpreted as holding that once the contract specifications are submitted for bids as required by State law (actions of the State Highway Commission are controlled by an entirely different statute which requires competitive bids), and the bids are opened, the bid cannot be reformed. In State Highway Commission v. Canion, 250 S.W.2d 439, the court granted the contractor's plea to rescind the contract and recover his guaranty deposit on the basis of an honest mistake. The case was not one involving reformation. In that case the contractor could not seek reformation because the Standard Specifications for bidding provided in effect that a request to change the unit prices must be in writing "and in the hands of the State Highway Engineer prior to the time set for opening of proposals."

It is now conceded by the Attorney General that the statute governing the actions of the Board of Regents does not require the seeking of competitive bids. This was the only possible impediment to the legality of the compromise agreement evidenced by the virtually contemporaneous agreement to pay $17,000.00, *if legal,* and the execution of the contract. The bid was reformed and agreed to, almost simultaneously with the execution of the contract, and together, they constituted one contract between the parties. Otherwise, there was no meeting of the minds, and plaintiff should be entitled to recover on the theory of unjust enrichment. The Board has commended the quality of the work and agreed that the true value of the work is the total of the contract price plus $17,-000.00.

Plaintiff offered in evidence the affidavit of Board member, Mr. Brown (full text

of which is annexed to this opinion). Mr. Reeves stipulated that the affidavit was attached to one of his motions on file in this cause. The trial court sustained Reeves' objection to the last clause only. It stated in part: "By agreement of the parties, it was decided that the Board of Regents would pay an additional $17,000.00 (which figure was arrived at by compromise and settlement) if the Board of Regents had the legal authority to do so. * * * It was the consenious [sic] of the Board of Regents that the Board would do so if advised by the Attorney General or *other authority* that it would be legal to do so. If the Attorney General or *other authority* ruled that it could be done, *I considered it a part of the contract.* * * * The agreement to pay the additional $17,000.00 was not a gift or a grant to Walter Goetz, but was a promise given as consideration for the execution of the contract dated August 14, 1958, but was just compensation due Mr. Goetz by reason of the error. * * *"

The courts are the *other authority* to pass on the legality of the compromise agreement. We should not duck the only question (legality of the compromise agreement) existing in the minds of the contracting parties by resort to rules of evidence in order to reach an unjust and contrary result.

Mr. Reeves testified: "The question, so far as I can see, with regard to this motion that the Board filed, was that they did want Goetz and Sons to have the contract, and if he was willing to accept the award, they were willing to, as stated in the resolution, they were willing to pay him an additional sum over the award."

Despite plaintiff's pleadings and evidence that there was but one contract which was in the amount of the bid plus $17,000.00, the Board offered no rebuttal testimony as to the intention of the contracting parties. The affidavit of Board member Wm. V. Brown clearly reflects that he considered the motion to be a part of the contract.

Despite the testimony of Reeves, quoted above, he then testified that had the contract or award, as he calls it, been an amount which included the $17,000.00, he would not have approved it, "* * * in view of the conversations that I made with Regent Barnes." The net effect of Reeves' position was that, in his mind, Goetz would not recover the $17,000.00—in any case—whether the actual contract did or did not include the $17,000.00. Neither he nor the Board conveyed this shocking conclusion to Goetz until after the work was completed and this lawsuit was filed.

In Wigmore On Evidence (2d Edition—1940), it is stated:

§ 2430(1) "Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties thereto.*"

§ 2430(2) "This intent must be sought where always intent must be sought * * * namely, in the *conduct and language* of the parties and the surrounding *circumstances.* The document alone will not suffice. What was intended to cover, cannot be known till we know what there was to cover." (Emphasis—Wigmore).

"The purpose of the extrinsic evidence is to prevent fraud * * *. However, the rule will not be applied where its enforcement would be inequitable or result in fraud, as where one party, under the application of the rule, would be enabled to obtain an unfair advantage over the other party." 23 Tex.Jur.2d Evidence § 342 (1961).

The facts in this case are undisputed and there is no occasion for the application of the parol evidence rule to reach an unjust result. A similar situation is discussed in 3 Corbin on Contracts, § 609 (1960):

"Suppose, first, a case in which a bidding contractor makes an offer to supply specified goods or to do specified work for a definitely named price, and that he

was caused to name this price by an antecedent error of computation. If before acceptance, the offeree knows, or has reason to know, that a material error has been made, he is seldom mean enough to accept; and if he does accept, the courts have no difficulty in throwing him out. He is not permitted to 'snap up' such an offer and profit thereby * * * a just and reasonable man will not insist upon profiting by the other's mistake."

As noted by the Court of Civil Appeals: "Commendably, the Board did not attempt to take advantage of the bona fide mistake * * *." And yet, the effect of the majority opinion is to order the Board to take advantage of the contractor without ever having passed on the legality of the undisputed agreement of the parties to pay the additional sum. I agree with the holding of the Court of Civil Appeals that "there was no legal impediment to the just and honorable settlement of the matter made by the Board" and the contractor.

I would affirm the judgment of the Court of Civil Appeals.

HAMILTON, J., joins in this dissent.

APPENDIX

No. 133,767

THE STATE OF TEXAS
COUNTY OF BEXAR

BEFORE ME, the undersigned authority, on this day personally appeared WILLIAM V. BROWN, who after being duly sworn upon his oath disposed and stated as follows:

My name is William V. Brown, and I have personal knowledge of each and every fact stated in this affidavit. I was a member of the Board of Regents of the Texas State Teachers Colleges on the 14th day of August, 1958, and I was present, and took part in the negotiations between the Southwest Texas State Teachers College and Walter E. Goetz concerning a contract to build improvements at the Teachers College at San Marcos, Texas.

A mistake in the bid of Walter Goetz had been brought to the attention of the Board of Regents, and a great deal of discussion had been had between the members of the Board of Regents and Walter Goetz. The Board determined that the mistake was bona fide and that it should be remedied.

After discussion and consideration of the problems involved, there was some question in the minds of some of the members of the Board of Regents as to whether or not the Board of Regents had the legal authority to enter into a contract with Goetz exceeding the amount which he had mistakenly bid. By agreement of both parties, it was decided that the Board of Regents would pay an additional $17,000.00 (which figure was arrived at by compromise and settlement) if the Board of Regents had the legal authority to do so.

This agreement was made before the acceptance and execution of the contract with Mr. Walter Goetz, as I recall. This contract was made about ten (10) years ago, and I have to rely on my memory of what transpired regarding this transaction, aided by the official minutes of this meeting which I have just read which refreshed my memory on what transpired at the meeting. It was the consensius of the Board of Regents that the Board would pay the $17,000.00 if it could lawfully do so and would do so if advised by the attorney general or other authority that it would be legal to do so. If the Attorney General or other authority ruled that it could be done, I considered it a part of the Contract.

The agreement to pay the addition $17,-000.00 was *not* a gift or a grant to Walter Goetz, but was a promise given as consideration for the execution of the contract dated August 14, 1958, but was just compensation due Mr. Goetz by reason of the

error, and to compensate him for his loss on his bid, occasioned by error.

William V. Brown

SUBSCRIBED AND SWORN TO this 11th day of September, A.D., 1968.

*Mary Heslop*

Notary Public—Bowie County, Texas