# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00275-CV

**Jackie Doss Smith, Appellant**

**v.**

**Virginia Lagerstam, Emil Lagerstam, Kathryn Lagerstam Wilbeck,
Vivian Lagerstam Savage, and Annika Lagerstam Kaye, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
## NO. GN402753, HONORABLE MARGARET COOPER, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

Mindful that we may not relax a movant's burden in a summary judgment proceeding so as to deprive a litigant of the right to trial by jury, I would conclude that this case turns on the inadequacy of the Lagerstams' motion for summary judgment—an issue clearly preserved on appeal. Because a material fact issue exists on elements of Smith's causes of action and the Lagerstams' motion is entirely inadequate with respect to Smith's cause of action for unilateral mistake, I respectfully dissent.

## BACKGROUND

Smith's father, Clarence T. Doss—now deceased—and his sister, Virginia Lagerstam, inherited identical mineral interests to land in Robertson County, Texas. Smith inherited her father's interest when he died. In 1984, Smith and Virginia Lagerstam leased their mineral interests to XTO

Energy by separate oil and gas leases. These leases were included in a pooled unit known as the Biggs Gas Unit. Under the terms of their leases and the unit designation, Smith and Virginia were each entitled to receive a .0009901 royalty interest on production from wells on the unit.

From 1985 to 2002, Smith received small royalty payments on the Biggs Gas Unit, which had one well, the Biggs #1 Well. In 2002, a second well was drilled on the unit, the Biggs #2, and in 2003, a third well, the Biggs #12 well, was drilled. In January 2004, Smith and Virginia were both receiving royalty payments on the three wells in the approximate amount of $350 per month.[1]

In February 2004, Smith received an unsolicited offer in the mail from San Saba Royalty to purchase her .0009901 royalty interest in the Biggs Gas Unit for $6658.99. At about the same time, Smith learned that her disabled son needed $6000 to pay back taxes on his home. In her affidavit in response to the summary judgment motion, Smith averred that she was a widow, had no other source of income, and had been unable to help her son. Because the offer provided an opportunity for her to help her son, she decided to investigate the offer further. Knowing that her aunt Virginia had a royalty interest identical to hers, and assuming that Virginia had received the same offer, Smith called Virginia for advice. Smith averred that she believed Virginia and her husband Emil had greater business knowledge, particularly about matters related to royalties and oil and gas. Smith explained her son's tax problem and her desire to help him, and sought Virginia's advice. Smith averred that Virginia said she would talk to Emil and call Smith back. In her deposition, Virginia confirmed that Smith needed the money for her son. The parties dispute other aspects of the telephone call.

---

[1] The January and February 2004 royalty checks were $329.90 and $353.85, respectively.

After discussing the matter with Emil, the next day Virginia contacted Smith and offered to purchase Smith's royalty interest for the same price offered by San Saba. Virginia explained that she wanted to give the interest to her three daughters. Smith averred that she told Virginia that she was not aware she could sell her interest to someone other than the company that had made the offer. Virginia assured her that they could buy the interest and expressed her desire that Smith deed the interest in the wells directly and in equal portions to the daughters. Because she considered the sale a good way to help her son and also to keep the royalty interest in the family, Smith agreed to sell her interest to the Lagerstams and deed the interest over to the daughters.

The Lagerstams proceeded to prepare the papers. Smith received her last royalty check before signing over the deeds; the check dated February 20, 2004, was in the amount of $353.85. On March 9, 2004, Virginia and Emil Lagerstam traveled to Austin and met with Smith. Smith executed three royalty deeds prepared by the Lagerstams' attorney and received a check from the Lagerstams for $6660. Smith averred that she "trusted Virginia and Emil to have the deeds prepared to reflect" their agreement. She understood that she was selling to the Lagerstams exactly the same interest that San Saba offered to purchase—her royalty interest in the Biggs Gas Unit. Smith sent the $6660 to her son to pay his back taxes on his home.

After executing the deeds, Smith received three royalty checks from XTO Energy which she understood were for production prior to the sale. On March 19, she received a check for $510.10 as royalty on the Biggs #'s 1, 2, and 12 wells. For the first time, however, the check included royalties for a new well known as the Biggs #7 well. On April 20, she received a check in the amount of $1025.90 as royalties for the Biggs #1, 2, 7, and 12 wells, as well as another

3

new well, the Biggs #4.  On May 20, she received a third check in the amount of $974.85 as royalties on production from all five wells—Biggs #'s 1, 2, 4, 7, and 12.  Because she thought that the payments on the two additional wells were a mistake, she attempted to contact XTO Energy to inquire about them.

On June 10, 2004, Smith received by mail (i) a transfer order from XTO Energy showing the transfer of her royalty interest to the Lagerstams' daughters and (ii) a new offer to purchase her royalty interest from San Saba—this one for $62,651.38.  The transfer order listed all five Biggs Gas Unit wells.  Smith immediately contacted XTO Energy and obtained confirmation that her interest had included five wells, rather than three.  She also spoke with Hal Coons of San Saba who reaffirmed the offer to purchase.  Smith averred that she learned for the first time through these conversations that there were five wells and that her interest in all of the wells had been conveyed to the Lagerstams' daughters.

After receiving the revised San Saba offer, Smith contacted Virginia and told her about the additional offer and the two new wells.  Smith explained the mistake and asked Virginia if they could "undo" the transaction.  Virginia declined and said that it was impossible to undo the transaction.

Smith subsequently learned that the Biggs #7 well, on which she first received royalties on approximately March 19, was completed in January 2004 and that the Biggs #4 well, on which she first received royalties on April 20, was completed in February 2004.  Thus, both wells had been completed and were producing before Smith agreed to sell her royalty interest to the Lagerstams, but she received no payments on the wells until after she had signed the deeds over to

4

the Lagerstam daughters. Smith wrote a letter to the three daughters explaining the background of the wells and how she learned of the two new wells. She advised them: "I assumed that I was only selling a royalty interest that would pay $200-$300 per month. I don't know if Virginia knew about the two new wells, but if she did, she didn't tell me." Smith offered to refund the purchase price and to pay for any legal fees necessary to transfer the interests to her own children who had had a "tough time economically" and to whom the additional income would mean a lot. She concluded, "I hope you can find it in your heart to help me and, more important, my children."

In her affidavit filed in response to the summary judgment motion, Smith averred that she did not know of the two additional wells when she signed over the deeds. According to Virginia's affidavit in support of the Lagerstams' motion, neither did the Lagerstams:

> As of March 9, 2004, I had no knowledge of the status of the wells existing being drilled and/or being planned to be drilled. My only knowledge consisted of the information attached to the monthly royalty checks which would be the same information that Plaintiff would receive. I had no knowledge that additional wells were being drilled or had been drilled, or were being planned to be drilled. I made no representation to the Plaintiff on any of these matters because I had no knowledge about the wells.

### The Lawsuit

In two causes of action, Smith filed suit to rescind the three deeds on the grounds that the deeds were the result of a mutual or a unilateral mistake. Specifically, she urged that the deeds by mutual mistake conveyed more than the parties intended. In her second cause of action, she alleged that she executed the deeds in error and that the transaction did not reflect her understanding and agreement as to the interests being sold. She alleged that she did not fail to exercise ordinary

5

care under the circumstances in signing the deeds as prepared by her aunt and uncle's attorney. Smith asked that the deeds be reformed to convey only her interest in royalties on production from the Biggs Gas Unit Well #'s 1, 2, and 12 or, in the alternative, that the transaction be rescinded.

***Summary Judgment Motion***

In a one-and-a-half-page motion for summary judgment filed pursuant to Texas Rule of Civil Procedure 166a(b) and (i) with no citation to authority, the Lagerstams contend that they were entitled to summary judgment because Smith failed to adduce any evidence that the mistake was mutual and that the Lagerstams "never said or did anything to indicate that the sale was supposed to be a transfer only of an interest that involved a certain number of then existing wells." They assert that "[t]he Affidavit evidence conclusively establishes that the Defendants, the Purchasers of the interest, never intended for their purchase to be anything other than for the entire interest owned by Plaintiff," and that "[n]either law nor fact supports the Plaintiff's attempt to set aside the transaction on the basis of an alleged unilateral mistake on her part." Attached to the motion are Virginia's affidavit; San Saba's February 9, 2004 letters with the initial purchase offer; the three mineral and royalty deeds conveying Smith's interest to the three daughters; Emil Lagerstam's check payable to Smith in the amount of $6660; an offer to purchase Virginia's interest in the amount of $1087.50, dated March 5, 2004, from another company; and Smith's letter to the daughters requesting rescission, dated July 1, 2004. The Lagerstams also submitted excerpts of the deposition transcripts of Smith, Virginia Lagerstam, and Emil Lagerstam.

To controvert the Lagerstams' motion, Smith filed a response to which she attached the following evidence: Smith's affidavit appending five exhibits showing the San Saba offers, the

6

conveyancing documents, and the division transfer order and XTO Energy documents showing the additional wells; the affidavit and resume of Wayman T. Gore, Jr., a consulting petroleum engineer who opined as to the present value of Smith's royalty interest in the existing and additional wells; excerpts of the depositions of Virginia and Emil Lagerstam; and Virginia's affidavit.

The trial court granted the Lagerstams' motion without specifying its grounds. Smith now appeals, claiming the trial court erred in granting summary judgment because the summary judgment proof establishes evidence in support of the elements challenged by the motion and, in any event, raises genuine issues of material fact.

## ANALYSIS

On appeal, Smith contends that the trial court erred when it granted the Lagerstams' motion because issues of material fact exist regarding whether the deeds should be rescinded on the basis of a mutual or unilateral mistake. Citing only to Rule 166a(b) and (i) and relying on no case law, the Lagerstams' motion does not otherwise specify the type of summary judgment they seek. Nor do they join issue on appeal as to whether their motion is a "traditional" or a no-evidence motion.[2] They claim that they always intended to acquire Smith's entire royalty interest,

---

[2] Although Smith on appeal characterized the Lagerstams' motion for summary judgment as a traditional motion, she nevertheless responded to both types of motions. While a party may move for both traditional and no-evidence summary judgment in a single document, it is advisable to use headings to separate the different claims, *see Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004), or, at least, because the motions are distinct and invoke different standards of review, that the motions be set forth so that they give adequate notice of the grounds on which they are based. A summary judgment must stand or fall on its own merits. In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). For purposes of this discussion, I have assumed that the Lagerstams asserted both traditional and no-evidence motions.

that any mistake alleged was not mutual, and that any unilateral mistake was the result of Smith's carelessness.

### *Standard of Review*

We review summary judgments *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A party filing a traditional motion for summary judgment must prove that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion." Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If the movant's motion and summary judgment evidence establish its right to judgment as a matter of law, the burden shifts to the nonmovant to defeat summary judgment. The nonmovant then has the burden to respond to the motion and to present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *Nixon*, 690 S.W.2d at 548. In deciding whether there exists a disputed fact issue precluding summary judgment, we treat evidence favorable to the nonmovant as true, and we must resolve every doubt and indulge all reasonable inferences in the nonmovant's favor. *Id*. at 548-49. The Lagerstams—in their motion—had the burden to disprove as a matter of law at least one essential element of each of Smith's theories of recovery or to plead and conclusively establish each element of an affirmative defense. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Because they did not plead or seek to establish an affirmative defense, they were required to disprove an element of Smith's theories of recovery.

8

The party moving for no-evidence summary judgment must assert only that there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). The burden then shifts to the nonmovant to produce evidence raising a fact issue on the challenged elements. *Id.* In reviewing a no-evidence motion for summary judgment, we ascertain whether the nonmovant pointed out summary judgment evidence of probative force to raise a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206-08 (Tex. 2002). A no-evidence motion for summary judgment must be granted if the party opposing the motion does not respond with competent summary judgment evidence that raises a genuine issue of material fact. Tex. R. Civ. P. 166a(i).

A no-evidence summary judgment is improper if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.*; *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions. *Id.* As with a Rule 166a(c) summary judgment, we take as true all evidence favorable to the nonmovant, and we make all reasonable inferences therefrom in the nonmovant's favor, disregarding all contrary evidence and inferences. *Id.*

9

A summary judgment motion under Rule 166a(b) may be combined with a Rule 166a(i) motion as it appears it was here. The fact that the Lagerstams as movants attached evidence to the motion does not foreclose it from also asserting that there is no evidence of a particular element. *See Binur v. Jacobo*, 135 S.W.3d 646, 650-51 (Tex. 2004).

When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

### *Mutual Mistake*

In their motion for summary judgment, the Lagerstams first contend that there is no evidence that the Lagerstams "intended for the transaction to be limited as Plaintiff claims." Virginia's affidavit, they claim, "conclusively establishes that the Defendants, the Purchasers of the interest, never intended for their purchase to be anything other than for the entire interest owned by the Plaintiff." They assert that "the most basic element of this cause of action is that the mistake was mutual" and there is "no evidence that the Defendants intended for the transaction to be limited as Plaintiff claims."

When parties have contracted based on misconception or ignorance of a fact, mutually held by the parties, which materially affects the agreed-upon exchange, either party is entitled to have the transaction set aside. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). The elements of mutual mistake that must be proved by the plaintiff to prevail at trial are (i) a mistake of fact; (ii) held mutually by the parties; (iii) which materially affects the agreed-upon exchange.

10

*Barker v. Roelke*, 105 S.W.3d 75, 84 (Tex. App.—Eastland 2003, pet. denied); *de Monet v. PERA*, 877 S.W.2d 352, 357 (Tex. App.—Dallas 1994, no writ) (citing Restatement (Second) of Contracts § 152 (1981)).

A motion for summary judgment must rest on the grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex. 1993). The motion must state, with specificity, the grounds upon which the movant is relying. *Brewer & Pritchard, P.C.*, 73 S.W.3d at 204. The rationale for this requirement is to force the movant to define the issues and give the nonmovant adequate notice for opposing the motion. *McConnell*, 858 S.W.2d at 343-44. To determine if the grounds are expressly presented in the motion, neither the court nor the movant may rely on supporting briefs or summary judgment evidence. *Id.* at 340-41.

By their motion for a traditional summary judgment, the Lagerstams were required to show that they were entitled to judgment as a matter of law and that no genuine issue of material fact exists. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). A summary judgment movant bears this burden only when moving for traditional summary judgment. When the movant does not meet its burden of proof to show its entitlement to summary judgment, the burden does not shift to the nonmovant to raise a fact issue. *M. D. Anderson Hosp. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).[3]

---

[3] A movant must establish its entitlement to summary judgment, the motion must stand on its own merit, and even a nonmovant's failure to respond cannot supply by default the summary judgment proof necessary to establish the movant's right. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

11

In their motion, the Lagerstams first moved for summary judgment on Smith's causes of action, seeking to prove with summary judgment evidence that Smith has no cause of action. They assert that there is no evidence of mutual mistake because there is no evidence that the Lagerstams intended to purchase only Smith's interest in the three wells on which they were both receiving royalties. They assert as grounds for the motion that they "never intended for their purchase to be anything other than for the entire interest owned by the Plaintiff." But Smith is not asserting that the deeds conveyed more than she intended to convey; rather, she asserts that the transaction was founded on the parties' mutually mistaken belief that, at the time of the transaction, there were three wells on the Biggs Gas Unit, when in fact there were five. Thus, the parties present contradictory evidence as to what was known at the time of conveyance and what was intended to be conveyed.

In the first instance, the Lagerstams did not establish that they were entitled to summary judgment as a matter of law. By merely disputing that the mistake was mutual, they did not carry their burden to disprove at least one element of the plaintiff's theory of recovery. At most, they created a fact issue. In a traditional summary judgment motion, evidence and reasonable inferences are viewed in the light most favorable to the nonmovant, Smith, and we must indulge every reasonable inference and resolve all doubts in Smith's favor. *See Nixon*, 690 S.W.2d at 549. The burden did not shift to Smith until the Lagerstams conclusively established their entitlement to summary judgment. *See M. D. Anderson Hosp.*, 28 S.W.3d at 23. Even then, Smith's summary judgment response did not have to establish a fact as a matter of law. Rather, Smith had only to raise

an issue of fact material to the outcome of the case. *See* Tex. R. Civ. P. 166a(c); *Centeq Realty, Inc.*, 899 S.W.2d at 197.

Accordingly, after reviewing the evidence, I would hold that a fact question exists as to the only ground asserted for summary judgment: whether any mistake of fact was mutual. In light of the conclusory nature of the motion and the questions of Smith's and Virginia's intent, state of mind, and credibility on the issues in the case, these issues pose classic questions of fact for resolution by a jury. The majority missteps into the shoes of the fact finder and resolves these issues without reference to the requirement that we resolve such doubts and inferences in the nonmovant's favor.

Moreover, by urging that Smith "is put to the burden of proving the essential elements" of her causes of action and that there is "no evidence that the Defendants intended for the transaction to be as limited as Plaintiff claims," the Lagerstams in effect are asserting a no-evidence motion rather than a traditional motion. And the only ground asserted in the motion is that the mistake was not mutual because the belief was not also held by the Lagerstams.

The mistake of fact alleged by Smith is the number of producing wells on the Biggs Gas Unit at the time of the sale. Smith's affidavit and Virginia's affidavit agree that neither knew any more about the number of wells on the unit than the information provided on their check stub from XTO Energy. According to the check stubs they were receiving prior to the sale, there were three producing wells on the gas unit, paying royalties to Smith of approximately $350 per month. The summary judgment evidence is undisputed that neither of the parties knew anything about the two additional producing wells at the time of the sale. Smith was only required to produce more than

13

a scintilla of evidence to defeat summary judgment. This evidence alone raises a fact issue that there was a mistake of fact held mutually by the parties. The Lagerstams did not show their entitlement to summary judgment and, in any event, Smith raised questions of material fact to defeat the motion.

*Unilateral Mistake*

Even assuming the Lagerstams carried their burden as to Smith's mutual mistake theory, their motion was deficient with respect to their second ground, which attacked in one sentence Smith's second cause of action. In their second ground for summary judgment, the Lagerstams refer to Smith's allegation of unilateral mistake. The entirety of their motion as to unilateral mistake states: "Neither law nor fact supports the Plaintiff's attempt to set aside the transaction on the basis of an alleged unilateral mistake on her part." They cite no authority and, except for a reference to Virginia's affidavit, they fail to point to relevant facts. This declaration is deficient and fails to satisfy the Lagerstams' summary judgment burden under either traditional or no-evidence summary judgment requirements.

A party is entitled to set aside a transaction for unilateral mistake if (i) the mistake relates to a material feature of the contract, (ii) the mistake is so great that to enforce the contract would be unconscionable, (iii) the mistake was not the result of a lack of ordinary care, and (iv) rescission does not result in prejudice to the other party, other than the loss of his bargain. *James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.*, 335 S.W.2d 371, 373 (Tex. 1960). A contract cannot be avoided for unilateral mistake where a party's "ignorance of the facts was the result of carelessness, indifference, or inattention." *Roland v. McCullough*, 561 S.W.2d 207, 213 (Tex. Civ. App.—San Antonio 1978, writ ref'd n.r.e.).

14

Regardless of whether we view the Lagerstams' motion as to unilateral mistake as a traditional or no-evidence motion, it is defective and insufficient. A summary judgment motion must clearly set forth its grounds and meet the rule's requirements. *Binur*, 135 S.W.3d at 651. Consisting of only a single sentence, the Lagerstams' motion cites to no authority and refers to no evidentiary facts. Because it fails to show any entitlement to summary judgment, it fails to satisfy the requirements of a traditional summary judgment motion. The Lagerstams' single sentence did not shift the rule 166a(c) summary judgment burden from the Lagerstams, the movants, to Smith, the nonmovant. *See M. D. Anderson Hosp.*, 28 S.W.3d at 23.

In addition, the declaration that "neither law nor facts supports plaintiff's attempt to set aside the transaction on the basis of" unilateral mistake is deficient to qualify as a 166a(i) motion because the motion fails to specify either the elements of the cause of action or the elements challenged as lacking evidence to support them. Although the mere filing of a *proper* no-evidence motion shifts the burden to the nonmovant, and the motion need not be detailed, it must still meet certain requirements. It must first state the elements for which there is no evidence. Tex. R. Civ. P. 166a(i); *Southwest Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). A defendant's motion must state the elements of the plaintiff's cause of action and specifically challenge the evidentiary support for an element of that claim. Tex. R. Civ. P. 166a(i) cmt.; *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 436 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

Second, the motion cannot be conclusory or generally allege that there is no evidence to support the claims. *Id*. A motion, as here, that merely states that there is no evidence to support

15

the other party's claim is insufficient. *See, e.g.*, David Hittner and Lynne Liberato, *Summary Judgments in Texas*, 47 S. Tex. L. Rev. 409, 416 (2006) (citing *Abraham v. Ryland Mortgage Co.*, 995 S.W.2d 890, 892 (Tex. App.—El Paso 1999, no pet.) and *Lampasas*, 988 S.W.2d at 436). The Lagerstams fail both to specify the elements of Smith's claim and to state which elements lacked evidentiary support.

In any event, assuming arguendo that the Lagerstams' motion was sufficient in any respect, Smith was required to produce more than a scintilla of evidence in response to the Lagerstams' 166a(i) motion. This she did. Smith produced ample evidence on each element of this cause of action; the Lagerstams did not reply to Smith's response.

The mistake alleged by Smith—her understanding that there were three producing wells on the Biggs Gas Unit—relates to a material feature of the agreement. The facts as adduced by Smith at least raise a fact issue as to whether Smith showed such carelessness, indifference, inattention or lack of good faith to deny her equitable relief. The Lagerstams do not dispute that Smith had no knowledge about mineral interests. Virginia disputes that Smith called the Lagerstams for advice because they had superior knowledge of the business of royalty interests and oil and gas, but Virginia avers that they did not investigate the status of the Biggs Gas Unit any more than Smith did before agreeing to the transaction. Although the Lagerstams argue on appeal that Smith should have known that her royalty interest involved multiple wells and that the number of wells on the unit was increasing, in her affidavit Virginia averred that "I had no knowledge of the status of the wells existing being drilled and/or being planned to be drilled." Smith averred as to how she came to learn after the transaction that two new wells were drilled on the property just prior to the conveyance.

16

This evidence alone raises a fact issue that there was a material mistake of fact that was not the result of a lack of ordinary care. Moreover, the evidence shows—and is undisputed—that the magnitude of the mistake was considerable and that rescission would not result in prejudice to the other party other than the loss of the bargain. The Lagerstams failed to carry their summary judgment burden.

## CONCLUSION

I would hold that the Lagerstams did not carry their burden to demonstrate their entitlement to summary judgment, that Smith demonstrated that genuine issues of material fact exist on elements of her causes of action, and that the district court erred in rendering summary judgment in favor of the Lagerstams.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Filed: June 1, 2007

17